## MIDDLE DISTRICT, HARRISBURG.

### Watts *et al. versus* Devor.

1. A private direction to an agent not to purchase goods on credit, will not save the principal from liability to third persons, where the usual course of the business is to purchase on credit.

2. A debt of the principal may in some cases be taken out of the Statute of Limitations, by the act of an agent having authority, either specified or necessarily implied from the nature of his duties; but the naked fact that the agent

[Watts et al. *v.* Devor.]

contracted the original indebtedness, will not warrant the implication of such authority.

3. An agent employed as the manager of iron works, borrowed money for the use of the establishment more than six years before suit brought. *Held*, that the naked promise of the agent, within six years to pay the debt, would not take the case out of the Statute of Limitations.

4. An executor or administrator cannot waive the Statute of Limitations.

5. A new promise of a joint debtor is allowed to affect no one but himself.

ERROR to the court of Common Pleas of *Cumberland county*.

The facts of the case are fully stated in the opinion of the court by

BLACK, J.—The defendants were the owners of a forge and furnace, which they employed an agent to carry on. Their order, at first, was to do a cash business; but this was rendered impossible by their own failure to furnish the funds, and the agent began to buy goods and borrow money, where he could get it on the credit of the owners. This is a suit on one of the debts thus created. The jury found that the defendants knew of their agent borrowing money, but there was no evidence that either of them knew what the plaintiff's claim was, or that he had any unsatisfied claim against them, for a very long time after the transactions in which it originated. The agent, acting in the line of the business he was employed about, had authority to bind his principals for a debt which their interests required him to create. They are liable, under the circumstances of this case, for the money he borrowed to carry on the iron works, notwithstanding the order they gave him against doing business on credit.

A third person dealing with an agent who seems to have a general power, is not affected by a private order from the principal to the agent. Besides, the direction not to borrow, or buy on credit, was revoked when the agent disobeyed it in other cases with the knowledge of the defendants, and without any renewal of the prohibition.

Of course, the plaintiff was bound to show that his contracts with the agent were honest and fair. If he took the notes and receipts of the agent for sums which he and the agent both knew to be greater than the principals justly owed, with the corrupt intent to hold them for a debt, which in conscience they were not bound to pay, then the plaintiff cannot recover what he actually advanced, any more than the amount fraudulently added thereto. Positive fraud not only defeats itself, but vitiates whatever else it comes in contact with.

The defendants allege that the plaintiff's design in advancing the sums now sued for, was to get payment of the agent's private debts out of his principals' property, and to exact usurious interest; that with this end in view, the whole course of dealing was studiously concealed from the defendants for ten years, although during most of that time the plaintiff and defendants

[Watts et al. *v.* Devor.]

lived near together, in the same town, and the agent at a considerable distance in the country.

In answer to a proposition combining all these allegations of fact, and concluding with a prayer for instruction, on the whole effect of them taken together, the court said that if they were true, the plaintiff could not recover anything. But the jury found them not to be true, and that settles the question. We cannot think for a moment of sustaining the exception taken to the court's answer. The error assigned is, that the court did not pronounce the defendants' conduct to be a legal fraud. They did declare, in substance, what was truer in point of law, that the conduct imputed to him was an actual fraud; but they did not decide, and have no right to decide, that he had been, in fact, guilty of such conduct.

But the court, after answering the general proposition of the defendants in the affirmative, added that the usurious interest was not of itself such a fraud as would avoid the contract. Whether this was right or wrong, is a point on which we give no opinion; for it is not raised. There is no error regularly assigned to that part of the charge, in which the specific matter of usurious interest was discussed.

The several sums of money now sued for, were borrowed more than six years before suit brought. The agent who transacted the business was discharged from the service of the defendants nearly five years before the writ issued. The defendants were not called on for payment, nor even informed that the claim existed until after the Statute of Limitations had run over it. They themselves made no acknowledgment which could prevent the statute from doing its work, and accordingly they now claim its protection.

The plaintiff's reply is, that the same agent who originally contracted the debt, afterwards, and within six years before suit brought, admitted its justice, and promised to pay it. The Court of Common Pleas decided, that inasmuch as the agent had authority to make the original contract, he might also bind his principals by a new promise.

Certainly a debt may be taken out of the statute by the act of an agent done in the regular course of his business, if he has specific authority for that purpose, or if such authority be necessarily implied from the nature of his duties. But this results, not as the court below seems to have thought from the power to create new debts, but from the distinct and independent power to settle and adjust old ones. These powers are not in their nature the same, nor very much alike. The one is not a logical nor legal consequence of the other.

The wants of the iron works required that the person who had them in charge, should get money and goods on the credit of the

[Watts et al. *v.* Devor.]

owners.   If he made any such contract for their benefit, and they received the fruits of it, the law implies a promise on their part, that they would make it good, if legally called upon to do so within six years.  But where was the consideration which could bind them in conscience to ratify what he afterwards did by way of modifying the original bargain?  What duty had he to perform, which required him to interfere between his principals and one of their creditors, by extending the term of their liability beyond the duration affixed to it by the law?   How can he say that the business of his agency was helped on by a voluntary agreement to waive the rights of his principals under the Statute of Limitations?   These questions are not answered by saying that he made the debt in the first place; for it is not possible to conceive why such a debt should be under his control more than one contracted by another agent, or by the principals themselves, in their own proper persons.

This kind of dealing with an agent will not bear the test of that common sense which is the best part of the common law. What man, having a claim against a merchant, would feel himself safe after six years, if he would constantly and carefully pass by the debtor himself, and taking his clerk aside, would get a secret acknowledgment from him?  Would not the feeling of insecurity, and the consciousness of injustice, be deepened by the reflection that the debt had originally been contracted by the same clerk without his master's knowledge, and that the master was still profoundly ignorant of it?

All the difficulty which this part of the case has in it, is solved by one of the simplest rules that the law knows of.   No mere naked declaration, acknowledgment, or admission of an agent, can be received as evidence against his principal, in any case whatever.   Within the scope of the authority delegated, the principal is bound by the *acts* of the agent, but by his *words* never, unless they are part of the *res gestœ*.   What he says at the time of doing an act is part of the act itself, and as such may be proved by either party to explain and characterize it.   But words spoken by an agent, with reference to a transaction past and done, have no more effect upon his principal than the same words uttered by a stranger.   One who wishes to save his debt from the limitation, cannot get an admission from the debtor's agent that he contracted it, and then call that same agent as a witness to prove his own admission.

The agent is a competent witness to the sum lent, but, like other witnesses, he must testify to facts, and not to mere declarations, whether made by himself or by others who are not parties in interest.

All that the agent swears he did, in this case, amounted to no more than a naked admission of the debt, coupled with a promise,

[Watts et al. *v.* Devor.]

*as agent*, to pay it. He was not, at the time, engaged in any business of his principals, nor performing any duty which he owed to them. His words were not spoken acts. There was no *res gestæ* of which they could be called a part. The promise meant, of course, that not he, but his principals, should pay the claim. Such a promise, without any consideration moving to the principal, was something worse than *nudum pactum;* it was no pact at all. Men's legal rights cannot be so. given away behind their backs. It is not thus that the operation of a wise and beneficial statute can be defeated.

An admission, or a promise, to be worth anything, as such, in a court of justice, must be against the interest of the party making it. This is particularly true of promises and admissions relied on to take a case out of the Statute of Limitations. An executor or administrator, though appointed for the very purpose of ascertaining and paying the decedent's debts, cannot waive the statute, and the new promise of a joint debtor is allowed to affect no one but himself. It is fair to presume, that when a man speaks at the peril of his own pocket, he will admit nothing which his conscience allows him to deny. But, language for which others are responsible, will seldom be so carefully guarded. A better indication of the will is not needed, than the facts of this case afford. Here was a man, who had no interest of his own, in keeping the plaintiff's claim within the limits of justice, and he was so profusely liberal as to promise for other persons, that they would pay his debt as well as their own, with usurious interest on both. I do not say that there was any bad faith in this, but it shows how dangerous this kind of evidence would be.

For these reasons, we are all of opinion, that on a debt contracted by an agent, the Statute of Limitation begins. to run in favor of the principal, from the time when it is payable by the terms of the contract, and that a subsequent acknowledgment and promise to pay it, made by the same agent or any other, cannot be received in evidence to prevent it from being barred, the promise not being made in pursuance of special authority, nor forming a necessary part of the agent's proper business, nor founded on any new consideration.

This covers the whole ground. But still, it is proper to say, that even if the agent has been specially authorized to ascertain the amount of the plaintiff's claim, and to promise for the defendants that they would pay it; a settlement which included his own debt, and a promise, as agent, based upon such settlement, would be wholly void. It does not seem necessary to discuss the less important points. It is enough to say, that they appear to us to have been rightly ruled.

Judgment reversed, and *ven. fa. de novo* awarded.