## SUSAN ROARTY

### *v.*

### MICHAEL SMITH, trustee, et al.

1. Where all the lands of which partition is sought by tenants in remainder of several undivided shares are held by a single particular estate, partition cannot be had without the consent of the tenant of that particular estate.

2. Where a testator devised and bequeathed his entire estate to trustees, to collect the income therefrom and divide the net income in specified proportions among his children for their respective lives, and at the death of each child gave and devised a specified portion of the *corpus* of the estate to the child or children of the child dying, or, and in the event of there being none, to others—*Held* that, upon the death of each child, the estate which the trustees formerly had in that portion of the *corpus* which was given to the child or children of the deceased child, or to others if there should be no child, ceased.

On bill for partition and answer thereto.

The bill seeks the partition or sale of four parcels of land of which John McDermott died seized on the 21st of October, 1885. By his will he devised and bequeathed his entire estate to Lorenzo W. Elder and Michael Smith and the survivor of them, in trust, to keep the personal estate invested in good inter-

Roarty v. Smith.

est-bearing securities and take charge of the real estate, receive its rents, issues and profits, maintain it and divide the net annual income from the whole property in the proportions of three-twentieths thereof to each of his children, Mary, William, Susan, Michael and Edward, during their respective lives, and two-twentieths thereof to his son Patrick during his life, if he should appear within five years and claim it; and if he should not appear within that time and claim it, one-twentieth each additional to Susan and William and two-twentieths thereof to the testator's granddaughter, Lizzie McAlpine, daughter of Mary, above named, for her life, and one-twentieth thereof to the testator's granddaughter, Mamie Roarty, the daughter of Susan, above named, for her life.

Following the provision for such trust, the will proceeds to provide that "after the death" of each child and grandchild named, the testator gave, devised and bequeathed to the then surviving child or children of such decedent, or, if there should be no such child or children, to others indicated by the will, a proportion of the *corpus* of his estate equal to the proportion of the income to which the decedent was theretofore entitled.

Lorenzo W. Elder assumed the trusteeship alone, but died, and thereupon Michael Smith qualified as trustee, and now survives and is acting as such trustee.

The testator's daughter Mary died on the 5th of June, 1889; his son William died on the 9th of October, 1889; his son Michael died on the 6th of October, 1890; his granddaughter Lizzie died on the 24th of September, 1892, and the son Patrick has not been heard of for many years.

Under the will, in virtue of the deaths referred to, the complainant takes an undivided share in the *corpus* of the estate, as well as three, or perhaps four-twentieths of the income, and because of such interest in the *corpus* now seeks partition of the lands in question. Her right to compel such partition is denied by the trustee.

*Mr. Gilbert Collins,* for the complainant.

*Mr. Abel I. Smith,* for the defendant Michael Smith, trustee.

THE CHANCELLOR.

The trustee's claim is that he is entitled to a particular estate in the whole of the lands of which partition is desired, which will endure until the last surviving life beneficiary shall die. He argues that, as each of said beneficiaries is to have a certain proportion of the whole net income, it is necessary for the trustee, in order to effectuate that right, to continue to the end of the trust to take the entire income, retaining his estate in the whole *corpus* for that purpose, and, having such particular estate, he alone is entitled to the present actual possession of the property, and, that being so, he may, as the law stands to-day, by withholding his consent to a partition, which the due execution of his trust requires, and he consequently does, defeat the object of the bill.

Let us first understand the law.

Joint tenants and tenants in common were not, at common law, compellable to make partition. By force of statutory law, existing at the opening of the present century, to which reference is made in *Stevens* v. *Enders, 1 Gr. 271*, partition became compellable between (1) those who held as joint tenants or tenants in common estates of inheritance in their own right or in the right of their wives; (2) those who held as tenants in common or as joint tenants for life or years; (3) or where one had an estate for life or years and another of freehold or inheritance; (4) and a tenant by the curtesy. *Stevens* v. *Enders, supra.* But such partition did not extend to persons taking in remainder, vested or contingent, because they were neither in actual possession nor entitled to immediate possession in severalty after the partition should be made. The object of the enactment was simply to remove the inconvenience of joint possession and give the present use in severalty to those who, before the partition, should be entitled to it jointly. It follows, as was held in *Burroughs* v. *Dunlap*, reported with *Stevens* v. *Enders*, that under that enactment there cannot be a partition at all where the whole estate in possession is held in one interest.

In 1816 a statute was enacted to give power of sale where partition could not be effected without great prejudice to the

owners, but it was held not to be applicable to a case where, by the limitations of the estates, remainders existed. *Stevens* v. *Enders, supra; Young* v. *Rathbone, 1 C. E. Gr. 224, 226.*

By the enactment of March 6th, 1852 (*P. L. of 1852 p. 157; Rev. p. 801 § 25*), a means was afforded to render a partition between tenants in possession binding upon the tenants in remainder or expectancy (*Smith* v. *Gaines, 12 Stew. Eq. 545, 548*), and a supplement to that act, in 1861 (*P. L. of 1861 p. 318; Rev. p. 802 §§ 26–29*), authorized a sale of lands in which the undivided shares were limited over in the manner specified in the act of 1852, provided an actual partition would impair the value of the lands one-fourth part thereof, amended in 1891 (*P. L. of 1891 p. 423*) so that it should be allowed if the land is so circumstanced that a partition thereof cannot be made without great prejudice to the owners or persons interested in the same.

By a statute in 1858 (*P. L. of 1858 p. 478; Rev. p. 802 § 30*) the several tenants in remainder in fee of lands which are held by a particular estate for life or lives or less, are allowed, with the assent of the tenant of the particular estate, to have partition, or, under proper circumstances, sale.

It is perceived, upon this review of the law, that the decision in *Burroughs* v. *Dunlap* remains undisturbed, and that if the defendant Michael Smith has such an estate in the whole property left by John McDermott as he claims, and he cannot, under his trust, consent, or does not consent to a partition, then the complainant will be unable to secure the object of her bill and the bill must be dismissed. But if his estate in any undivided part of the property has ceased, upon the death of one or more of the beneficiaries under the trust created by the will, and others have become the owners of that undivided part and are entitled to present actual possession thereof jointly with the trustee, those persons may enforce partition and by it bind the trustee and, as well, those who take in remainder the undivided part he yet holds.

The vital question to be solved, then, concerns the extent of the trustee's estate, and that is to be determined by the intention of the testator with respect to it.

His apparent scheme was that his children and his two grand-children mentioned in the will, should receive income only for their respective lives. To accomplish that purpose, he bequeathed and devised his estate, real and personal, to trustees to so manage it that an income should be derived which they should divide and pay in specified proportions to the beneficiaries indicated during their respective lives. The terms of this provision standing alone lead to the inference that the estate of the trustees was to continue in the whole property to the termination of the trust. But the provision is immediately followed by a consideration of the ultimate disposition of the *corpus* of the estate, in which he prescribes that "after the death" of each of the several life beneficiaries, he "gives, devises and bequeaths" to his other child or children a portion of his estate equal to the proportion of the income had by the deceased beneficiary, or, if there should be no such child or children, then to others as specified. He does not expressly provide for a *pro tanto* termination of the trust estate in his property upon the death of a beneficiary of the income for life, but from the disposition of a portion of the *corpus* at that time, which is inconsistent with the continuance of the trust estate in that part of the *corpus*, I think a controlling implication arises that his intention was that, as each life-right to income should fall in, a specified proportion of the *corpus* should be cut off from the whole, and that only the portion left should remain under the trust.

The estate taken by the trustees was to be merely that which should suffice for the execution of the trust pursuant to the testator's intention. At first they were to take the whole property, but when the daughter Mary died they no longer needed three-twentieths of the estate to enable them to perform their duty, and thereupon their estate in that three-twentieths ceased. In the same manner, when the sons William and Michael and his granddaughter Lizzie died, eight or nine-twentieths more of the property passed out from the trustees' estate.

The surviving trustee's particular estate now extends to only a fractional part of the whole estate. He is a tenant in common

17

with the complainant and others, who, jointly with him, are entitled to present actual possession of the land in question.

I am of opinion that the bill will lie.

There will be a reference to determine the title and interest of the respective parties, and whether partition can be had without great prejudice.