# The American Life Insurance and Trust Co. *versus* Shultz.

1. The death of the agent through whom a contract has been effected does not exclude the testimony of the party dealing with him, under the Act of 1869, in an action against his principal.

2. In an action brought against a life insurance company for the violation of an alleged contract to give a "paid up policy" after the third payment upon a life policy, not expressed in the policy, evidence of the powers of the agents generally is inadmissible.

3. Where a life policy has been issued upon proposals signed by the insured, and an action is brought against the company upon a contemporaneous verbal agreement to issue a "paid up policy" after the payment of the third premium, it is error to reject evidence, on the part of the company defendant, of the powers of the agent through whom the insurance was effected.

4. In an action brought against an insurance company with whom a life insurance has been effected, upon a contract to deliver a paid up policy after

the third annual premium has been paid, the measure of damages is, not the amount of the premiums paid, since the action is not in disaffirmance of the contract, but the difference between the value of a paid up policy and the life policy held by the plaintiff.

5. It is error to reject evidence of the difference of rates of insurance for a paid up policy and for a life policy where the question is whether a verbal contract had been made by an agent of an insurance company contemporaneously with the execution of proposals and delivery of a life policy, to deliver a paid up policy for the premiums paid, with participation in profits, offered to show the inherent improbability that such a contract was made.

May 3d 1876.  Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD JJ.   WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Lancaster county :* Of May Term 1876, No. 69.

This was an action of assumpsit, brought by David Shultz against The American Life Insurance and Trust Company to recover damages for the refusal on the part of the company to issue to him a paid up policy, after the payment of the third premium upon a life policy effected.

The defendant company pleaded non assumpsit and payment with leave, &c., non assumpsit *infra sex annos.*

Elisha Geiger was the agent of the company at Lancaster, and some time in the spring of 1866, upon his solicitation, Shultz signed an application for a mutual policy for the sum of $10,000 for the benefit of his wife.

The terms for one of Shultz's age were $81.80 per thousand per annum, with the provision that " when the premium amounts to $50 or more, annually, one half may be paid in a note at twelve months with interest."

Shultz elected to avail himself of this provision, paid in cash $409, and gave his note payable in twelve months for $409 with interest.   This was done each year, and the interest on the notes added to the cash payments of each year.

Shultz alleged that Geiger said, when he made the application, whenever Shultz would pay up the third payment he could get a paid up policy for the premiums he had paid, and get dividends out of the concern whatever it would pay.

Shultz also alleged that when Geiger brought him the policy and he made the payment, Shultz refused to take the policy because it was not according to the contract.   Geiger replied, " If you don't take the policy, we will keep your money ; you can't get your money back ; you had better go on and pay up the third payment and then you will get your paid up policy."

Geiger died soon after and Mr. Gara was appointed agent.   Subsequent to the first transaction as above detailed, all of the business was conducted by Gara.   Shultz continued his payments until after the third payment.   Before this payment he told Gara he would demand a paid up policy ; written on the back of an advertising card of the company signed by Gara, was " After this payment, you

[American Life Ins. & Trust Co. *v.* Shultz.]

can get a paid up policy for the whole amount you have paid." After several months and repeated solicitations Gara told him the company had changed their rules and he could not get it.

The fourth and fifth premiums were paid because he was told he would lose all he had paid. After the fifth, the premiums were paid under protest that they were paid because he did not wish to run the risk of forfeiture.

On the 12th of December 1873, after making eight payments of $409, which, with the interest paid on the notes, amounted to $3869.01, he brought suit; the jury, finding for the plaintiff, awarded that amount as damages for the breach of the contract.

On the trial of the cause the plaintiff offered himself as a witness, and was objected to because Geiger, the agent for the company, with whom the contract of insurance was made, was dead. He was admitted and this was the first error alleged.

The defendant below offered to prove the powers of the agents of the American Insurance Company, and again what were Geiger's powers during the alleged contract, both of which were rejected, and are the 2d and 3d errors.

The defendant offered to prove "What were the rates in 1866 for such a policy as Mr. Shultz testifies Geiger agreed he should have," which was rejected, and is the 4th error.

The 5th and 6th assignments of error are contained in the 7th.

7th error. Instruction. "If you find that it was part of the original contract for the policy, that after paying the third payment, the plaintiff would get a 'paid up policy' if he required it, and that the plaintiff was induced to sign the proposals by the representation of the agent of the company, that that condition would be part of and contained in the written contract, in the proposals when he signed them, and paid the first premium on the policy, and was omitted from the policy, and when the agent came to deliver the policy Shultz said he would not receive it, because it was not according to contract, and the agent replied, ' If you don't take the policy we will keep your money ; you can't get the money back, &c. ; further, you had better go on and pay up the *third* payment, and then you will get your policy, a paid up policy,' then this omission of the special contract alleged should not be attributable to any fault of the plaintiff and you should find for the plaintiff whatever premiums or money he has paid, without interest; the plaintiff asks no more in this suit."

The 8th and 9th assignments were to the measure of damages "the money paid" with 7th.

The remaining assignments were to the answers to the defendant's points.

10th. 1st point. The acceptance of a policy agreeing with proposals signed, the retention of it and payment of premiums for some years without objection, debars disaffirmance of the contract and

recovery of premiums paid. Affirmed with the qualification that a verbal promise made by the agent to obtain insurance and execution of the proposals, contemporaneously with the original contract, may be given in evidence to the disaffirmance of the contract in the proposals and policy.

11th. 2d point. No suit can be brought to recover premiums paid until the policy has been delivered to the company. Affirmed if the jury find that a paid up policy was never demanded, or tendered on condition such demand be complied with, or tender refrained from because of the refusal to give a paid up policy.

12th. 3d point. Payment of premium without objection for years without demand for a non-forfeitable policy, was in law a ratification and acceptance in its present form of the policy, and precludes recovery. Affirmed if plaintiff *since its date* paid premiums without making such demand, the alleged original special contract to deliver a paid up policy after the third payment would be deemed in law abandoned, and preclude recovery, this in submitting a question of fact of which there was no evidence.

13th. 4th point. Local agents have no authority to conclude absolutely a contract of insurance, nor can they alter one already made which the court declined to affirm, as assuming a fact not proved by any evidence in the case.

14th. 5th point. If the contract was broken, it was broken when the policy of insurance was delivered, and action is barred by the Statute of Limitations. Negatived. The statute would not commence running until payment of third premium.

15th. 6th point. No evidence can be given of the contract except the policy of insurance, unless on ground of fraud, accident or mistake. Negatived.

16th. 7th point. Under the law and evidence defendant entitled to verdict. Negatived.

*Wm. Aug. Atlee* and *Isaac Hazlehurst*, for plaintiff in error.— Within the spirit of the Act of 1869, Shultz incompetent: Karns *v.* Tanner, 16 P. F. Smith 305; Hanna *v.* Wray, 27 Id. 27. Rejection of evidence of powers of agents: Hays & Wick *v.* Lynn, 7 Watts 525; Moore's Ex'rs *v.* Patterson, 4 Casey 512; Fire Association *v.* Williamson, 2 Id. 198. The policy defines rights of parties: West Branch Ins. Co. *v.* Helfenstein, 4 Wright 296; Hays & Wick *v.* Lynn, 7 Watts 525 *supra;* Moore's Ex'rs *v.* Patterson, 4 Casey 512; Greenleaf's Ev., vol. 2, sect. 59; Junction Railroad Co. *v.* Pennsylvania Railroad Co., 2 Weekly Notes 277; Irvine *v.* Buckaloe, 12 S. & R. 37; Fire Ins. Co. *v.* Massey, 9 Casey 225; Jordan *v.* Stewart, 11 Harris 247; Bank *v.* Bank, 1 Parsons 246. As to measure of damages, submit the following tabulated statement:—

[American Life Ins. & Trust Co. v. Shultz.]

DAVID SHULTZ, WITH AMERICAN LIFE INS. CO.

DR.                                                                    CR.

| 1866 | | | | 1866 | | | |
|---|---|---|---|---|---|---|---|
| Apl. 16, | To anl. prem. | $818 | 00 | Apl. 16, | By cash. In. not charg'd in advance. | $409 | 00 |
| 1867 | | | | | | | |
| Apl. 16, | do. · do, | 818 | 00 | 1867 | By cash. | 409 | 00 |
| " " | " Int. on note | 24 | 54 | | " Interest. | 24 | 54 |
| 1868 | | | | 1868 | | | |
| Apl. 16, | To anl. prem. | 818 | 00 | Apl. 16, | By cash. | 409 | 00 |
| " " | Int. on 2 notes | 49 | 08 | | " Interest. | 49 | 08 |
| 1869 | | | | 1869 | | | |
| Apl. 16, | To anl. prem. | 818 | 00 | Apl. 16, | By cash. | 409 | 00 |
| " " | Int. on 3 notes | 73 | 62 | | " Interest. | 73 | 62 |
| 1870 | | | | 1870 | | | |
| Apl. 16, | To anl. prem. | 818 | 00 | Apl. 16, | By cash. | 409 | 00 |
| " " | Int. on 4 notes | 98 | 16 | | " Interest. | 98 | 16 |
| 1871 | | | | 1871 | | | |
| Apl. 16, | To anl. prem. | 818 | 00 | Apl. 16, | By cash. | 409 | 00 |
| " " | Int. on notes | 112 | 72 | | " Interest. | 112 | 72 |
| 1872 | | | | 1872 | | | |
| Apl. 16, | To anl. prem. | 818 | 00 | Apl. 16, | By cash. | 409 | 00 |
| " " | Int. on notes | 113 | 40 | | " Interest. | 127 | 93 |
| 1873 | | | | | Balance. | 2,992 | 31 |
| Apl. 16, | To Int. unp'd. | 143 | 84 | | | | |
| | | $6,341 | 36 | | | $6,341 | 36 |
| Apl. '73, | To Balance, Notes in hand of Co. | 2,992 | 31 | | | | |
| | | 2,399 | 00 | | | | |
| | | $593 | 31 | | | | |

Defendant's 1st and 3d points : Mecke *v.* Insurance Co., 8 Phila. R. 6 ; Leg. Int. 1871, p. 5.   6th point: Weisenberger *v.* Harmony Ins. Co., 6 P. F. Smith 442 ; Lee *v.* Guard Life Ins. Co., U. S. C. C. California Ins. L. J., January 76, p. 26 ; Bush *v.* West Chester Fire Ins. Co., 63 N. Y. 531.

*D. G. Eshleman, O. J. Dickey* and *S. H. Reynolds,* for defendant in error.—As to evidence of agent's authority : Bennett *v.* Judson, 21 N. Y. 238, 239 ; Udell *v.* Atherton, 7 Hurlst. & N. (Exch.) 171 ; Mal. Iron Works *v.* Insurance Co., 25 Conn. 465 ; 1 Smith's Lead. Cases 329, 6 Am. ed. ; Bebee *v.* Hartford M. F. Ins. Co., 25 Conn. 51 ; Beale *v.* Park Ins. Co., 16 Wis. 241 ; Keeler *v.* Niagara Co., Id. 525 ; Insurance Co. *v.* Wilkinson, 13 Wall. 222 ; Adams Express Co. *v.* Schlessinger, 25 P. F. Smith 246 ; Tanner *v.* Oil Creek Railroad Co., 3 Id. 411 ; Woodbury Savings Bank *v.* Charter Oak Ins. Co., 31 Conn. 517, 527 ; Powelton Coal Co. *v.* McShain, 25 P. F. Smith 238.   As to the Statute of Limitations : 3 Am. Law Times 28, February No. 1876 ; Marton *v.* Ætna Life Ins. Co., s. c. Tenn. Ins. L. J., December 1875.

Mr. Justice PAXSON delivered the opinion of the court, May 29th 1876.

We do not see any merit in the first assignment of error. There is nothing in the Act of 15th of April 1869, which in terms excludes the plaintiff below as a witness. But it is contended that he comes within the spirit of the act, which was intended to produce equality, and not to open the lips of one party while those of the other were closed. The answer to this is that the deceased person, Mr. Geiger, was not a party to the contract nor to this proceeding. He was merely the agent of the insurance company, and a competent witness prior to the Act of 1869. Said act makes no one incompetent who was competent before. It was manifestly intended to enlarge, not to restrain the admission of evidence. A person, natural or artificial, who contracts through an agent, necessarily loses the benefit of his evidence in case of the death of such agent. Such event has never been held to close the mouth of the party dealing with the agent. It may be his misfortune, but it is one which we are powerless to remedy, and for which the Act of 1869 does not provide.

We are not prepared to say that the court erred in rejecting the evidence offered to show the powers of the defendants' agents generally. But it was manifest error to exclude an inquiry as to the powers of Mr. Geiger, the agent with whom the plaintiff contracted. His acts could only bind the company within the scope of his authority, hence proof of his authority was material even for the plaintiff. The burden of proof lies on him to establish the agency and the extent of it: Hays v. Lynn, 7 Watts 525. The plaintiff having given some evidence to show that Geiger was agent for the company, but without any definite or accurate statement of his powers, it was clearly competent for the company to show what his powers were; or that he had exceeded his authority, or to deny the agency itself. The extent of an agent's powers depends upon the authority under which he acts. This may be shown by his written instructions or his course of dealing. It is true the public are not always bound by the private instructions of the agent; and may hold the principal responsible, though the particular acts done are in excess of his private instructions. This was asserted in Adams Express Co. v. Schlessinger, 25 P. F. Smith 246. It applies to cases where the agent has been held out to the world as such by the principal, allowed to exercise enlarged powers from time to time, and his acts therein have been ratified by his principal. But this doctrine in no sense conflicts with the right of the principal to show that his agent in a given case exceeded his authority. The effect of such evidence when received is for the jury.

It was also error to exclude the evidence offered to show the company's rates of insurance. The plaintiff's action is for a breach of contract in not giving him a paid up policy. It was certainly

[American Life Ins. & Trust Co. *v.* Shultz.]

competent for the company to show that the rates for a paid up policy were higher than the rate the plaintiff paid. If competent for no other purpose it would be entitled to go to the jury as tending to throw discredit upon the plaintiff's statement. For if the amount of premium upon a paid up policy was largely in excess of the premium charged for a life policy, it would be a question for the jury whether there was not an inherent improbability in the plaintiff's testimony as to the contract between the agent and himself.

The learned judge also erred in his instructions as to the measure of damages. The case was tried in the court below upon the theory of a rescission of the contract of insurance. But the record is not so. The declaration is in assumpsit for breach of contract in not issuing a paid up policy. The plaintiff does not seek to recover the specific sums of money paid as premiums. It is true they are set out by way of inducement. But the damages claimed are for a non-compliance with an alleged agreement to deliver a paid up policy. The proper measure of damages is the difference between the value of a paid up policy, and the life policy held by the plaintiff. To permit him to recover under this declaration as for a rescission, would be to give him all his premium money back again, and yet leave the company exposed to the hazard of a claim upon his policy in case of his death. I say a claim, for the declaration is not so clearly drawn as to render its interpretation easy or certain. But I regard this as the most reasonable construction of it, and in this view the measure of damages as adopted by the learned judge of the court below was erroneous.

If, however, the plaintiff goes for a rescission, he is met with the fatal obstacle of his payment of premium after suit brought. He cannot rescind the contract and yet hold it. That the payment was made under protest amounts to nothing. There was no such duress as would give force and effect to such protest. Payments may be made under protest for duties in order to obtain possession of goods; or for taxes to avoid an impending seizure and sale of property. But this is a mere matter of a breach of private contract. The plaintiff either had or had not a right to rescind the contract. If he had such right there was no reason why he should continue the payments of premium on his life policy. It was an act utterly inconsistent with rescission. It was not induced by any legal duress or constraint on the part of the company, but was the exercise of his own free will. If he had not the right to rescind, then the payment of premium prevented his policy from falling pending this litigation. This may have been the reason why the payment was made. It was perhaps a prudent course, but fatal to a rescission of the contract. The plaintiff cannot avail himself of his protest merely to try an experiment in litigation.

What has been said covers the first, second, third, fourth, seventh,

eighth and ninth assignments of error, and rules the important questions of this cause. We see no serious error in the remaining assignments.

Judgment reversed and a *venire facias de novo* awarded.