# Beal & Simons *v.* The Adams Express Company, Appellant.

*Principal and agent—Scope of authority—Burden of proof.*

The act of an agent is the act of his principal so long as it is within the scope of the authority delegated, but a delegation of certain specific powers gives no authority to bind the principal generally. The burden is upon him who seeks to avail himself of the acts of an agent, in order to charge the principal, to prove the authority under which the agent acted, to establish the agency and the extent thereof.

*Principal and agent—Statute of limitations.*

A debt may be taken out of the statute by the act of an agent done in the regular course of his business if he has specific authority for that purpose, or if such authority be necessarily implied from the nature of his duties, but this results, not from the power to create new debts, but from a distinct and independent power to settle and adjust old ones. These

powers are not in their nature the same, nor very much alike. The one is not a logical nor legal consequence of the other.

*Principal and agent—Statute of limitations—Promise by agent.*

A "route agent" of an express company, whose duty it is to "check up offices, trace lost goods, solicit business, and look after train messengers," cannot bind his principal by a promise which would take a debt out of the bar of the statute of limitations, where there is no evidence of a general authority, nor of a specific authority to make such promise, nor of a former course of dealing by the agent from which the existence of such authority might have been inferred.

*Statute of limitations—Insufficient promise.*

The evidence of a promise to pay a debt is wholly insufficient to avoid the bar of the statute of limitations, where it appears that there was no unconditional promise to pay, and no statement of any amount to be paid, nor reference to anything by which the amount could be definitely ascertained.

*Trial—Evidence to establish agency.*

Evidence to establish the fact of agency must necessarily be introduced in successive steps, and it is impossible for the court to determine its sufficiency to warrant submission of the question to the jury until after all the evidence is in.

Argued May 8, 1899. Appeal, No. 57, April T., 1899, by defendant, from judgment of C. P. Mercer Co., Jan. T., 1897, No. 136, on verdict for plaintiffs. Before RICE, P. J., ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by W. D. PORTER, J.

Assumpsit for loss of goods. Before MILLER, P. J.

The facts appear in the opinion of the court.

Defendant's sixth point and the answer thereto were as follows:

[6. Under the law and the evidence in this case the verdict of the jury should be in favor of defendant. *Answer:* Refused.] [5]

Verdict and judgment for plaintiffs for $251.27. Defendant appealed.

*Error assigned* among others was (5) above instruction, quoting it.

*E. P. Gillespie,* of *Gillespie & Pettit,* for appellant.—It is the duty of those who deal with an agent to know the terms of the

agency, because what he may do outside the terms of the agency is of no binding effect upon his principal: Ludwig & Son v. Gorsuch, 154 Pa. 413.

There was no evidence to justify the admission of proof of the acts and declarations of Mr. Dauman: Whiting v. Lake, 91 Pa. 349; Grim v. Bonnell, 78 Pa. 152; Moore v. Patterson, 28 Pa. 505; Hoffman v. Cumberland Valley R. R., 37 Atl. Rep. 214; Watts v. Devor, 1 Grant, 267; Morgan v. Wilson, 6 Kulp, 356; Butler v. Maples, 76 U. S. 766.

A naked admission of indebtedness without anything indicating the amount or nature of the debt or a promise to pay something without a reference to the sum to be paid is insufficient: Patterson v. Neuer, 165 Pa. 66; Hartranft's Est., 153 Pa. 530; Miller v. Baschore, 83 Pa. 356; Landis v. Roth, 109 Pa. 621; Kline v. Seidel, 1 Pa. Superior Ct. 22.

*W. H. Cochran,* with him *Q. A. Gordon,* for appellees.—A just protection to persons dealing with corporations imperatively requires that the act of the agent, within the general scope of the business with which he is intrusted, shall bind the company, although the specific act may be in excess of his private instructions: Adams Express Co. v. Schlessinger, 75 Pa. 246; American Life Ins. & Trust Co. v. Shultz, 82 Pa. 46.

When some evidence has been given of the existence of an agency, it is competent to give in evidence the acts and declarations of such agent respecting the subject-matter of his authority: Stewartson v. Watts, 8 Watts, 392.

A debt may be taken out of the statute by the act of an agent done in the regular course of his business, if he has specific authority for that purpose, or if such authority be necessarily implied from the nature of his duties: Watts v. Devor, 1 Grant, 267; Patton v. Hassinger, 69 Pa. 311; Yost v. Grim, 116 Pa. 527; Palmer v. Gillespie, 95 Pa. 340.

OPINION BY W. D. PORTER, J., March 21, 1900:

An agent of plaintiffs, on August 30, 1890, delivered to the defendant, a common carrier, at Kane, a lot of butter in tubs, consigned to B. E. Cartwright at Brockport, on the Toby branch of the New York, Lake Erie & Western Railroad. The line of transportation of the defendant company did not reach Brock-

port and the goods were to be delivered to a connecting carrier at Brockwayville. The goods ought to have reached their destination at Brockport on August 30, 1890, but they did not arrive, and within a few days after that time it was known to the plaintiffs that the property was lost. The right of action in this case accrued early in the month of September, 1890, but the action was not brought until December 31, 1896. The defendant pleaded nonassumpsit and the statute of limitations. At the trial in the court below the plaintiffs sought to take the case out of the operation of the statute of limitations by proving a promise to pay made, within six years prior to the bringing of the suit, by an employee of the defendant company, and the defendant offered evidence tending to establish a delivery of the goods to the connecting carrier at Brockwayville. The court submitted the evidence as to a delivery to a connecting carrier to the jury, with proper instructions, and the assignments of error upon that branch of the case are without merit.

The testimony upon which the plaintiffs relied to escape the bar of the statute of limitations was alleged to establish a promise to pay made by W. W. Dauman, an employee of the defendant company, who was designated as a " route agent." The question of the authority of this agent of the defendant company to bind his principal by such a promise would be pivotal of the case if the testimony as to his promise was sufficient. The plaintiffs, in order to show the authority of Dauman, offered in evidence a letterhead used by him, upon which was printed " Adams Express Company, Pennsylvania Department, W. W. Dauman, Route Agent," and they called a witness who testified that Dauman was a route agent but they offered no evidence whatever as to the character and extent of the duties and powers attached to that position. There was evidence that he had been seen to enter express cars while the train was in motion, and had been seen about the offices of the express company at railroad stations. Outside of his action in the present case the plaintiffs produced no evidence whatever as to the character of the powers delegated to this employee of the company. The defendant put Dauman upon the stand and he testified as to the powers, duties and responsibilities of his office : " Q. What is your business ? A. I check up offices, trace lost goods, solicit business and look after train messengers." It was not denied

by defendant that Dauman was a route agent, but they denied his authority to bind the company by any such promise as alleged by the plaintiffs, and the only direct testimony upon that question is that of Dauman himself, who, in addition to the above enumeration of his duties, testified as follows: " Q. Did you tell them, or either of them, not to bring a suit against the Adams Express Company, and that either you or the express company would indemnify them against loss? A. I did not. I had no authority to do so. Q. You say you trace goods that are lost. After you have traced them to whom do you make report? A. To my superintendent. Q. The mere tracing is the end of your duty? A. Yes, sir." This is the sum total of the testimony as to the authority of Dauman to bind the company, for he himself made no representation to the plaintiffs as to his powers touching the subject-matter. The plaintiffs do not testify that he represented that he had any authority to make a contract touching the matter in controversy, they simply say that he did make such a contract. Was there any evidence here to warrant the court in submitting to the determination of the jury the question of Dauman's authority to bind his principal? The act of an agent is the act of his principal so long as it is within the scope of the authority delegated, but a delegation of certain specific powers gives no authority to bind the principal generally. The burden is upon him who seeks to avail himself of the acts of an agent, in order to charge the principal, to prove the authority under which the agent acted, to establish the agency and the extent thereof. The admissions of agents concerning the transactions in which they are employed are, for many purposes, equivalent to the acknowledgment of the employer himself, but before such admissions or declarations can be given in evidence the fact of agency must be proved. It is not sufficient that the evidence establish that the agent is in some capacity employed by the principal, it must be sufficient to warrant a finding that the agent was authorized to represent the principal in the matter in controversy. This may be done by showing the agent to have been authorized to represent the principal in all matters, or that he was specially delegated to represent the principal in the matter under investigation, or that the particular department of the business of the principal to which the subject-matter in controversy appertained had been

committed to the management of the agent. The evidence of the delegation of authority may be the written instructions of the principal, or parol testimony showing a regular course of dealing with the knowledge of the principal, or that an agent of limited powers has been in the habit of managing the business committed to his care in a manner involving an enlargement of his powers, with the knowledge and acquiescence of his principal. The authority cannot be proven by the declarations of the alleged agent, nor by his acts done without the knowledge or authority of the principal : Hays v. Lynn, 7 Watts. 524 ; Whiting & Co. v. Lake, 91 Pa. 349 ; Moore's Exrs. v. Patterson, 28 Pa. 505 ; Telephone Co. v. Thompson, 112 Pa, 118. An extensive business renders it necessary that the management of the departments should be committed to agents, who shall deal with the public. Those agents within the limits of the department committed to their care represent the principal. The acts of such an agent within the general scope of the business with which he is entrusted are binding upon his principal. But the burden is upon the party seeking to charge the principal to establish by evidence the authority of the agent to act for the principal in the particular class of business to which the subject-matter of controversy belongs. When it is established by evidence that the agent had authority to transact the business out of which the controversy has grown, the principal may be held responsible, although the particular acts done are in excess of his private instructions. If it be shown that the agent had authority to receive freight, or to take charge of goods upon their arrival at their destination and deliver them to consignees, the public have a right to presume that he has authority to make all reasonable arrangements with regard to the time and manner of delivery; and if such an arrangement is made the principal will be bound, although the manner of the exercise of the authority of the agent may be in excess of his private instructions, but it must be proved that he had authority to deal with the subject-matter: Tanner v. Railroad Co., 53 Pa. 411 ; Adams Express Co. v. Schlessinger, 75 Pa. 246 ; American Life Insurance Co. v. Shultz, 82 Pa. 46. The powers of agents of corporations to bind their principal are governed by the same principles which control the agents of private individuals. There is no reason why the agent of a corporation should arro-

gate to himself a power not delegated by his principal which the agent of a private individual could not assert in his own behalf; each derives his authority from the voluntary delegation of power by his principal, for the exercise of that power he must answer to his principal. A corporation being an artifical creation must necessarily act through agents, but, whether a principal has many or few agents, the reasons for requiring the agents to act within the limits of the authority delegated are the same. In either case the agent has authority to bind his principal within the general scope of the business with which he is intrusted, although the specific act may be in excess of his private instructions: Butler v. Maples, 76 U. S. 766; Nippenose Mfg. Co. v. Stadon, 68 Pa. 256; Johnston v. Elizabeth B. & L. Assn., 104 Pa. 394. The fact that Dauman was a route agent of the defendant company did not give him power to transact business for the company without limitations, and persons dealing with him only had the right to infer that he was authorized to transact the business of a route agent. As to the nature and extent of the duties and authority of a route agent, the plaintiffs offered no evidence whatever, and saw fit to rely upon such inferences as might arise from the character of the office. The office is one with which the public cannot be expected to be familiar, and its title does not imply that the officer would have dealings with the public generally. From the title one would infer that the duties of the officer were connected with the department of transportation; that he looked after the condition of routes already established or the acquisition of new lines. It might be the function of this officer to exercise upon a given route the same authority exercised by a local agent at a fixed point. If so, that would simply refer to the ordinary business of the company, the receiving and delivery of freight. It is clear that nothing more than this can be inferred from the title of the office. The direct testimony as to the nature of the duties of the office is "check up offices, trace lost goods, solicit business and look after train messengers;" that is, to examine the condition of the offices, to see the manner in which train messengers discharged their duties, trace lost goods and solicit business. The inspection of offices and train messengers and the tracing of lost goods would simply involve an inspection of the operations of the company, and to solicit

business would only authorize an agent to make a contract for carriage. The authority to inspect the offices and train messengers could not empower the agent to bind his principal by any contract whatever. The duty to trace lost goods could only authorize the officer to make such contracts as were necessary to enable him to actually trace the goods. This plain recital of the duties and powers of such an officer covers every inference legitimately arising from the title of the office.

It may well be questioned whether the nature of the office and the evidence as to its powers would have been sufficient to sustain the finding that Dauman had authority to bind the company for a new debt, but the authority which the plaintiffs must establish in this case is much more comprehensive. When an agent is authorized to carry on a particular business he may make such contracts as are necessary to its operation, and his principal will be bound. The liability is immediate, and the principal must comply with the contract according to its terms and pay when due. The duty of the agent is to carry on the business operation committed to him, and he is held out to the world as representing his principal in that matter. When he makes a purchase of supplies to be used in the business it is for the benefit of his principal, who receives the fruits of it, and the law implies a promise on the part of the principal to pay in accordance with the terms of the bargain. When the debt becomes due an entirely different question is presented; the renewal of it is not a matter of the operation of the business committed to the care of the agent, nor is it an exercise of the power of the agent to create new debts; a new promise to pay is an extension of the liability of the principal beyond the duration affixed to it by law. "A debt may be taken out of the statute by the act of an agent done in the regular course of his business if he has specific authority for that purpose, or if such authority be necessarily implied from the nature of his duties, but this results not from the power to create new debts but from a distinct and independent power to settle and adjust old ones. These powers are not in their nature the same, nor very much alike. The one is not a logical nor legal consequence of the other:" Watts v. Devor, 1 Grant, 267. If there had been any evidence from which it might have been fairly inferred that

Dauman was empowered to settle and adjust claims against the company, it would have been proper to leave the question of his authority to the jury. The plaintiffs' case upon this point was without a prop to sustain it. There was no evidence of a general authority, nor was there of specific authority, nor was there evidence of a former course of dealing by Dauman from which the existence of such authority might have been inferred. To permit the jury to pass upon the question of the authority of the agent under such circumstances was error: Ludwig v. Gorsuch, 154 Pa. 413. The defendant was entitled to binding instructions, and the fifth specification of error is sustained.

Even if the evidence had warranted a finding that Dauman had authority to bind his principal by a promise to pay for the lost goods, the evidence of that promise is wholly insufficient to avoid the bar of the statute of limitations. There is no unconditional promise to pay; there is no statement of any amount to be paid, no reference to anything by which the amount could be definitely ascertained. " We will bear his expenses and we will stand between you and loss, but we don't want suit." " That would be the earlier meetings; later on insisting that we should bring suit against the Erie Railroad, the connecting line, to recover from them this butter, if they won't pay us he would, his company." " We will find the butter, or we will do so and so. We will yet find some trace of this butter or we will make it good." These three alleged promises made at different times are all the material out of which the plaintiffs must construct their bar to the statute of limitations. The first does not admit liability and does not promise to pay; the second was an agreement to pay in case suit was brought against the Erie Railroad and the money was not received from that quarter, and here again there was no admission of liability; the third did not imply liability, and was simply a suggestion that they would make a settlement with the plaintiffs in case they did not find where the butter was. Dauman was all this time asserting that the consignee had received the butter, and at none of the conversations did he admit that the Adams Express Company had failed to deliver the butter to the connecting line. The plaintiffs wholly failed to escape the bar of the statute: Weaver v. Weaver, 54 Pa. 152; Linderman v. Pome-

roy, 142 Pa. 168; Miller v. Baschore, 83 Pa. 356; Simrell v.
Miller, 169 Pa. 326; Hartranft's Estate, 153 Pa. 530; Patterson v. Neuer, 165 Pa. 66.

It is entirely unnecessary to consider the specifications of
error which relate to the admission of testimony and the refusal
of the court to strike it out on motion.   Evidence to establish the
fact of agency must necessarily be introduced in successive steps,
and it is impossible for the court to determine its sufficiency to
warrant submission of the question to the jury until after all the
evidence is in.   As the conclusion of the whole matter, the
defendant asked for binding instructions, which raised the ques-
tion of the sufficiency of the evidence to warrant the submission
to the jury of the existence of every fact essential to plaintiffs'
case.   The force of an appeal is not always dependent upon
the number of the assignments of error.   The assignment of
error which we have sustained determines the whole case.

Judgment reversed.