# Fee v. Adams Express Company.

*Principal and agent—Express company—Route agent—Evidence.*

1. Where it is sought to hold an express company on a contract made by one of its route agents to pay a sum of money to a constable for securing the arrest of thieves who had stolen packages from the company, it is proper to permit the general agent of the company, who had charge of the route agents and knew the extent of their authority, to testify that the route agent had no authority to make such a contract.

2. While the fact that a certain act is or is not within the scope of the authority of one who, admittedly, is a ministerial agent, cannot be proved by evidence of his declarations to third persons, yet if his authority is orally conferred, he is a competent witness to the fact.

3. An agent is competent to prove his own authority where it is by parol, but his declarations in pais are not proof of it; and though they become evidence as part of the res gestæ, if made in the conduct of his business intrusted to him, yet other evidence must first establish his authority to speak before his words shall bind his principal.

4. In an action against an express company to recover on a contract alleged to have been made by the route agent of the company, to pay the plaintiff, the constable, a stated sum for procuring the arrest of a thief, binding instructions should be given for the defendant, where the plaintiff produces no evidence to show the functions of a route agent, the nature of his duties, the extent of his powers, or that the company had ever held him out as having authority to make such a contract, or that he had ever made similar contracts with the plaintiff, or anyone else.

5. Where a route agent of an express company is assigned by his employer to investigate a theft, there is not implied in such assignment a power to contract with a constable, who had been designated previously as the commonwealth's agent in a requisition for a person charged with the theft, to pay such officer a specific sum for apprehending the accused in a distant state. The making of such a contract is beyond the scope, not only of the agent's actual, but of his apparent authority.

Argued April 20, 1908. Appeal, No. 50, April T., 1908, by defendant, from judgment of C. P. Fayette Co., June T., 1906, No. 422. on verdict for plaintiff in case of Charles M. Fee v. Adams Express Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit on an alleged contract of employment. Before UMBEL, J.

The facts are stated in the opinion of the Superior Court.

At the trial when E. E. Sanford was on the stand, he was asked this question:

"Q. I will ask you if you have any authority as route agent of the express company to make any such contract as Mr. Fee has testified here was made?"

Objected to as incompetent.

Objection sustained. Exception for the defendant. [1]

C. M. Day was asked this question:

"Q. I will ask you whether or not route agents in the employ of the Adams Express Company have authority and power to make any such contracts as Mr. Fee has testified that he and Mr. Sanford had?"

Objected to as incompetent.

Objection sustained. [2]

Counsel for defendant move the court to give binding instructions to the jury in favor of the defendant company for two reasons, as follows:

1. That there can be no recovery on the count alleging a contract, for the reason that there is no testimony that Sanford, the route agent, had authority to make such a contract.

2. There can be no recovery on the count of a quantum

meruit for the reason that there is no testimony as to the value of the services, if any, rendered.

The Court: Refused; exception for the defendant. [3]

The court charged the jury in part as follows:

[There are about only two questions for you to determine; one is whether or not a contract was entered into between the plaintiff and the representative of the defendant company; the other is, if you should determine the first against the plaintiff, what would be reasonable compensation for the plaintiff's services rendered in connection with the case, regarding which the testimony has been submitted.] [4]

[If you should find the contention of the plaintiff to be the correct one and that a contract of this character was entered into between him and the representative of the defendant company, the plaintiff admitting that he has already received $275 on account of the $500, if you should find and determine along that line, then under this contract there would be still due to the plaintiff the sum of $225, with interest from the time when it should have been paid, which the plaintiff claims was September 1, 1905.] [5]

[If the contention of the plaintiff prevail and there was a contract, then the amount was fixed by the contract and you should render a verdict accordingly.] [6]

Verdict and judgment for plaintiff for $240.21. Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions; (3) refusal of binding instructions; (4–6) above instructions, quoting them.

*A. E. Jones*, of *Jones & Henderson*, for appellant.—An agent cannot act for and bind his principal except within the scope of his authority. The burden of proving the authority of the agent is upon the one seeking to bind the principal: B. & O. Employees' Relief Assn. v. Post, 122 Pa. 579; Central Penna. Telephone & Supply Co. v. Thompson, 112 Pa. 118; American Life Ins. & Trust Co. v. Shultz, 82 Pa. 46.

Mr. Sanford was a competent witness to prove the agency, the scope and extent of his authority.

*Wooda N. Carr*, for appellee.—The principal is, generally speaking, responsible for and bound by those acts of his agent done in the course of the agent's employment and within the scope of the agent's authority: Susquehanna Mutual Fire Insurance Co. v. Cusick, 109 Pa. 157; Tanner v. Oil Creek R. R. Co., 53 Pa. 411; Kerns v. Piper, 4 Watts, 222.

This principle applies to the apparent scope of the agent's authority: Miller v. Saving Assn., 3 W. N. C. 480; Burton's Appeal, 93 Pa. 214; Laird v. Campbell, 100 Pa. 159; Griswold v. Gebbie, 126 Pa. 353; Hill v. Nation Trust Co., 108 Pa. 1; American Life Ins. & Trust Co. v. Shultz, 82 Pa. 46.

OPINION BY RICE, P. J., February 26, 1909:

A package of bank bills while in the possession of the defendant company was stolen in Fayette county, and E. E. Sanford, a "route agent" of the company for the district in which it was stolen, was directed to investigate the theft. The plaintiff, a constable of the county, alleges that he was employed by Sanford to assist in the investigation, and that in the course thereof, which extended over several months, he had many interviews and much correspondence with Sanford and other parties. As a result of their investigations, the nature of which need not be detailed, information was received from which it was concluded that James Pope and Thomas Pope were the guilty parties. Warrants were sworn out for their arrest, and Thomas Pope was arrested by the plaintiff in Fayette county under the warrant directed to him as constable, and was lodged in jail. The plaintiff claims from the defendant company $50.00 upon the allegation that before the arrest was made Sanford promised to pay him that sum for making it. He claims further that after Thomas Pope was lodged in jail Sanford promised to pay him $50.00 more if he would obtain a statement from the prisoner, and that acting upon this undertaking of Sanford he succeeded, after many talks with Thomas and making him many promises, in inducing him to make a truthful statement which implicated

himself and James Pope as the guilty parties. He testified that still later he ascertained that James Pope was in New Mexico, and that at the request of Sanford, and induced by his promise to furnish him transportation and pay him $400 for the service, in addition to the sum of $100 which the county agreed to pay, he went to New Mexico, arrested Pope and brought him back to Fayette county. In so doing he acted under a requisition issued by the governor of Pennsylvania at the instance of the district attorney in which he was named as agent of the commonwealth. He admits that his fees as constable for the arrest of Thomas Pope were taxed as part of the costs, that he received $100 from the county on account of his services in the extradition of James Pope, that transportation for himself and the prisoner, for substantially all the distance, was furnished by the defendant company, and that through its agents he received $275.

To state the plaintiff's case in condensed form, as shown by the amendment to his statement of claim and his testimony, the plaintiff based his demand for $500, less the admitted payments amounting to $275, upon an alleged express agreement of Sanford, "route agent aforesaid of the defendant," to pay him $400 for his services in connection with the arrest and extradition of James Pope, and $100 for his services in arresting and obtaining a statement from Thomas Pope. The defendant defended on two grounds: first, that Sanford made no such promises and entered into no such agreement as the plaintiff testified to; secondly, that he had no authority to bind the company by such agreement. The question whether the plaintiff could recover under the pleadings, without proof of an express contract for a specific sum, need not be discussed; for there was no evidence from which the jury could determine what amount, if any, beyond the sum paid him his services were reasonably worth. Nor would it be within our province to disturb the finding of the jury upon the question whether Sanford undertook in terms to bind his principal to pay the specific sums mentioned, even though we might be of opinion that as to that matter the evidence preponderated in favor of the defendant's contention; therefore we shall not discuss the question. So that the case,

as it is presented on this appeal, turns on the question of Sanford's authority. This question was raised by the plea of the general issue, by the denial of his authority in the defendant's supplemental affidavit of defense, by the objections made at the outset of plaintiff's examination as a witness, by the defendant's rejected offers which are set forth in the first and second assignments of error, and by the defendant's request for binding instruction.

As appears by the second assignment of error, the defendant offered to show by its general agent, who had charge of the route agents of the company, and knew the extent of their authority, that they had no authority to make such contracts. It is true in American Life Insurance and Trust Co. v. Shultz, 82 Pa. 46, the court declined to sustain an assignment of error to the rejection of an offer to prove the authority of the company's agents generally, but in the present case the offer was much more explicit. The offered evidence would have been well calculated to repel any erroneous inference that the jury might draw from the title of Sanford's agency, and would have tended to show in corroboration of the offered testimony of Sanford, that, as route agent, he had no authority to make the contract sued upon. The case of Central Pennsylvania Telephone & Supply Co. v. Thompson, 112 Pa. 118, is in point. There the acts and declarations of one Malin, a superintendent of the company's lines for the central district, were relied on by the plaintiff to fix the responsibility of the company, and the defendant offered to show by the general manager of the company whether Malin "as superintendent of the company's lines for the central district," had authority in fact to bind the company by what he said or did in reference to their contracts. With regard to the rejection of this offer the Supreme Court, speaking by Mr. Justice CLARK, said: "It was clear error to exclude this inquiry. It is always competent for a principal to show the scope and extent of his agent's authority. A superintendent is defined to be one who has the oversight and charge of something, with the power of direction, as the superintendent of an almshouse or of the public works; but a superintendent may have no authority to furnish supplies or purchase materials for

the enterprise he directs. What possible objection could there be to showing precisely what his powers were? If he was held out to the world in his general course of business for more extensive powers, the effect of the whole evidence was for the jury. His acts could only bind the company within the scope of his authority, hence proof of his authority was an important and material question." Upon the same ground, we are of opinion, it would have been competent for the defendant to show by the witness what the powers, duties and authority of a route agent of the defendant company were. If there is any well-grounded objection to the offer, it is that it was too general, not that it was not competent for the defendant to prove the powers, duties and authority of such route agent by a witness qualified and competent to testify upon the subject.

But assuming that upon the ground of its generality the offer was properly rejected, the same objection does not apply to the offer recited in the first assignment. While the fact that a certain act was or was not within the scope of the authority of one who, admittedly, was a ministerial agent cannot be proved by evidence of his declarations to third persons, yet if his authority was orally conferred he is a competent witness to the fact: 2 Greenleaf on Evid. (16th ed.), sec. 63; Lawall v. Groman, 180 Pa. 532. Hence it was error to reject the defendant's offer to prove by Sanford that he had no authority as route agent of the company to make such a contract as the plaintiff had testified to.

The third assignment of error is to the refusal of the defendant's request for binding instructions. The plaintiff adduced no evidence to show the functions of a route agent, the nature of his duties, or the extent of his powers. This was not a matter of which a court can take judicial notice, nor one within the common knowledge of men, and therefore presumably known by the jurors. The following extract from the opinion of our Brother PORTER in Beal v. Adams Express Co., 13 Pa. Superior Ct. 143, is directly in point: "The fact that Dauman was a route agent of the defendant company did not give him power to transact business for the company without limitations, and persons dealing with him only had the right to infer that he was

authorized to transact the business of a route agent. As to the nature and extent of the duties and authority of a route agent, the plaintiffs offered no evidence whatever, and saw fit to rely upon such inferences as might arise from the character of the office. The office is one with which the public cannot be expected to be familiar, and its title does not imply that the officer would have dealings with the public generally.' From the title one would infer that the duties of the officer were connected with the department of transportation; that he looked after the condition of the routes already established or the acquisition of new lines. It might be the function of this officer to exercise upon a given route the same authority exercised by a local agent at a fixed point. If so, that would simply refer to the ordinary business of the company, the receiving and delivery of freight. It is clear that nothing more than this can be inferred from the title of the office." It is plain, therefore, both upon principle and authority, that the fact that the person with whom the plaintiff made this alleged contract was a route agent of the company raised no presumption of law, and was not ground for an inference of fact, that the making of such a contract was within the scope of the agent's powers. Nor can such presumption arise or inference be drawn from the mere fact that the agent declared to the plaintiff that he was authorized to make it and conducted himself in their dealings in this single matter as if he had such authority. "An agent is competent to prove his own authority where it is by parol, but his declarations in pais are not proof of it; and though they become evidence as part of the res gestæ, if made in the conduct of the business intrusted to him, yet other evidence must first establish his authority to speak before his words shall bind his principal:" Jordan v. Stewart, 23 Pa. 244.

The principle upon which the agency and its scope may be implied or inferred from a course of dealing, might be applicable, if there were any evidence that the route agent had been in the habit, with the knowledge and acquiescence of his principal, of making similar contracts with the plaintiff or other members of the general public. The principle has been thus stated: "The extent of an agent's powers depends upon the authority

under which he acts. This may be shown by his written instructions or his course of dealing. It is true the public are not always bound by the private instructions of the agent; and may hold the principal responsible, though the particular acts done are in excess of his private instructions. This was asserted in Adams Express Co. v. Schlessinger, 75 Pa. 246. It applies to cases where the agent has been held out to the world as such by the principal, allowed to exercise enlarged powers from time to time, and his acts therein have been ratified by his principal:" American Life Ins. & Trust Co. v. Shultz, 82 Pa. 46. "The evidence of the delegation of authority may be the written instructions of the principal, or parol testimony showing a regular course of dealing with the knowledge of the principal, or that an agent of limited powers has been in the habit of managing the business committed to his care in a manner involving an enlargement of his powers, with the knowledge and acquiescence of his principal. The authority cannot be proven by the declarations of the alleged agent, nor by his acts done without the knowledge or authority of the principal: Hays v. Lynn, 7 Watts, 524; Whiting & Co. v. Lake, 91 Pa. 349; Moore's Exrs. v. Patterson, 28 Pa. 505; Telephone & Supply Co. v. Thompson, 112 Pa. 118:" Beal v. Adams Express Co., 13 Pa. Superior Ct. 143. As there is no evidence of a single instance in which Sanford was held out by the company as having authority to make contracts of the character described by the plaintiff, or that he ever made similar contracts with the plaintiff, or anyone else, either with or without the knowledge and acquiescence of the company, it is apparent that the doctrine under which an apparent authority may be implied from a holding out, or a course of dealing, would not sustain a verdict in the plaintiff's favor in this case.

A point is made of the admitted fact that Sanford was assigned to investigate the theft, but we are unable to agree with the appellee's counsel in their contention that, whether this power was specially conferred or was held by virtue of his position as route agent, there was implied in it the power to contract with an officer, who had been designated previously as the commonwealth's agent in a requisition for a person

charged with the theft, to pay such officer a specific sum for apprehending the accused in a distant state. The making of such a contract was beyond the scope, not only of his actual but of his apparent authority. Therefore the case is not within the doctrine of those cases in which it has been held that a principal is, generally, responsible for, and bound by, those acts of his agent done in the course of the agent's employment, and within the scope, or apparent scope, of his authority, although there may be as between the principal and agent a restriction upon that authority, or although the specific act for which it is sought to hold the principal liable was not in fact authorized.

It is argued that Sanford's own testimony established at least his apparent authority, and in support of this claim counsel cite the following extract from his cross-examination: "Do you mean to say that absolutely and positively you had no contract with Mr. Fee? A. I certainly do. Q. You had no contract with him at all? A. No contract whatever. Q. What did you expect to pay him, how much did you figure on paying? A. Just as we stated in our letter, a reasonable amount. Q. What in your idea is a reasonable amount? A. I believe we tendered or offered him $5.00 per day." This offer was evidently contained in a letter which was not produced, and the nonproduction of which was not accounted for. It does not appear by whom the letter was written, nor whom the witness meant by "we." If he meant himself, or himself and the local agent of whom he had previously spoken, the letter does not advance the proof of his authority a single step. The same is true if by "we" he meant the company he represented. We fail to see that this vague and indefinite testimony could properly be construed by the jury as an admission by the defendant's witness from which they could infer that he had authority to employ the plaintiff and to agree with him as to his compensation.

We will not prolong this opinion by a further recital of small details in the evidence which really throw no light upon the question for decision. A thorough examination of all of the testimony has led us to the conclusion that it is insufficient to support a finding that Sanford had authority to bind the company by a contract such as is described by the plaintiff. There-

fore the request for binding instruction should have been affirmed for the reasons stated in the request.

The judgment is reversed.