## Loomis *v.* Luzerne Silk Throwing Company, Appellant.

Argued March 4, 1929. Before TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Walter L. Hill,* of *Knapp, O'Malley, Hill & Harris,* for appellant.—The burden of proving authority to make the alleged contract was on the plaintiff: Dougherty Distillery Warehouse Co., Inc. v. Binenstock, 293 Pa. 566; Dodge v. Williams, 47 Pa. Superior Ct. 302; Humphrey v. Brown, 291 Pa. 53; Twelfth Street Market Company v. Jackson, 102 Pa. 269; Adams v. Herald Publishing Company, 74 Atl. 755.

*George Morrow,* for appellee.

OPINION BY GAWTHROP, J., April 10, 1929:

Defendant operates a silk throwing mill, in which raw silk is spun and prepared for customers in accordance with their specifications. It is known in the trade as a silk throwster. Plaintiff, a travelling salesman, who had been selling belting to defendant for sixteen years, alleges that on or about August 24, 1925, the defendant company, by its assistant manager, W. J. Griffiths, then acting in its behalf, promised orally to pay him 1% commission on all money it received from the Amalgamated Silk Corporation, of Allentown, Pennsylvania, for work which it, the defendant, did for said corporation; that plaintiff then consulted and prevailed upon the Amalgamated Silk Corporation to send some of its work to defendant; and that defendant had received from the Amalga-

mated Silk Corporation $85,645.05 for work done for it from October, 1925, to April, 1926, but refused to pay the commission due him under this contract. Defendant defended on two grounds, first, that Griffiths made no such promise; second, that he had no authority to bind the company by such promise. The court below submitted to the jury the single question whether Griffiths made the agreement alleged, instructing them that, if the bargain was made, plaintiff was entitled to the commission. The verdict was for plaintiff and from the judgment entered thereon defendant brings this appeal.

The first assignment of error is to the refusal of defendant's point for binding instructions, by which it raises the question of Griffiths' authority to bind the company by the agreement which the jury has found that he made with plaintiff, the question on which we have concluded this appeal turns. While the trial judge states in his opinion, discharging the rules for judgment n. o. v. and for a new trial, that he understood at the time he charged the jury that the contention that Griffiths had no authority to make the contract was abandoned, our examination of the entire record has not disclosed a word suggesting that defendant ever abandoned this defense. On the contrary, a large part of defendant's evidence relates to that question, and it was raised by the point for binding instructions.

Although plaintiff's case in the statement of claim is based upon the alleged agency of Griffiths, he adduced no evidence of the latter's express authority to make the contract. He offered no proof of his functions as assistant manager, the nature of his duties or the extent of his powers. These were not matters of which the court could take judicial notice, nor matters within the common knowledge of men and therefore presumed to be known by the jurors. The fact that Griffiths was assistant manager of the defendant

company did not give him authority to transact business for it without limitations, and those dealing with him only had the right to infer that he was authorized to do what an assistant manager could do. The mere fact that he was assistant manager of defendant was not sufficient ground for an inference of fact that the making of the contract sued upon was within the scope of the agent's powers. Nor did plaintiff adduce any evidence of a course of dealing between Griffiths and himself or between Griffiths and other members of the general public, from which the inference of fact could be drawn that he was acting within the scope of his apparent authority. The only business the plaintiff transacted with Griffiths up to the time of the making of the alleged contract was the selling of belting to defendant. The burden of proving Griffiths' authority to make the contract in defendant's behalf was on plaintiff: Dougherty Distillery Warehouse Co., Inc. v. Binenstock, 293 Pa. 566; Long v. Lehigh C. & N. Co. of N. E., 292 Pa. 164; Mahoning Valley Bread Co. v. B. & O. R. R. Co., 83 Pa. Superior Ct. 379. This burden he utterly failed to meet and, unless the evidence adduced by defendant was sufficient to support a finding that Griffiths had authority to bind it by a contract such as the jury found he made with plaintiff, the request for binding instructions should have been affirmed

The evidence adduced by defendant consisted of the testimony of its president, Mr. Simpson, and Griffiths, and letters written by plaintiff to defendant and by defendant to plaintiff.

Mr. Simpson testified that he was president and general manager of defendant; that Griffiths was his assistant and, as assistant manager, had the privilege of soliciting business but "prior to completing the contract it has always been with me;" that Griffiths had charge of the mill, getting the product out; that he

did buying, kept the books, and employed the help in the mill; that defendant never had employed anybody to solicit business for it; that Griffiths had no authority to make a contract with plaintiff to pay him a commission; that he (Simpson) knew plaintiff as a salesman soliciting orders for belting; that he saw the letters passing between Griffiths and plaintiff relating to plaintiff's proposal; that defendant did the work for the Amalgamated Silk Corporation, but that plaintiff never suggested, until November 13, 1925, that his services were being rendered for defendant, or that he expected to receive a commission from it.

Griffiths testified that he had nothing to do with the making of prices for throwing, or the making of any arrangements for throwing and had never done either; that defendant had never employed or paid anyone for soliciting business for it; that plaintiff was not working for defendant and did not suggest to him (Griffiths) that he was soliciting business for it, and never mentioned to him the subject of commissions until after defendant had started to do throwing for the Amalgamated Silk Corporation, when plaintiff told him that the latter corporation was paying him 1% commission. Griffiths admitted that when a "go-between," or commission man, gets the work for a throwster, it is the general custom for the latter to pay him a commission.

The defendant placed in evidence the correspondence passing between it and plaintiff between September 17, 1925, and December 4, 1925, consisting of sixteen letters. The first letter was from plaintiff to defendant, addressed to Griffiths, stating that he had some crepe to place for delivery about the middle of October, and asked Griffiths if his company could take the business or help him to find a company which would do the work. On September 19th Griffiths replied in the name of his company, asking for more

74

specific information about the character of the work and the members of the company for which it was to be done and their disposition to pay promptly. On September 22, 1925, plaintiff replied, stating that his customer was the Amalgamated Silk Corporation, of Allentown, giving to defendant the information requested in its letter of September 19th and requesting a reply. On September 26, 1925, Griffiths wrote plaintiff, stating that he was pleased to learn that a representative of the Amalgamated Silk Corporation had called on Mr. Simpson and that arrangements had been made to start some work for the Amalgamated Silk Corporation. On November 13, 1925, plaintiff wrote defendant stating that he had learned from the Amalgamated Silk Corporation that its bill rendered by defendant November 2nd, for $7,761.14, had been paid and that "if such is the case your check for 1% commission should reach me without delay." Defendant, by its president, replied November 14th, stating that it did not understand plaintiff's request for a commission on the account of the Amalgamated Silk Corporation; that it was under the impression that plaintiff was a solicitor for the Amalgamated Silk Corporation and not interested in defendant, except to the extent of getting it to do some work for the Amalgamated Silk Corporation. Plaintiff replied in a letter of November 21st, stating, inter alia, that he was merely acting as a "go-between" for the two corporations; that "I secured a good client for you. I think you will agree with me that my work is fully worthy of the very small commission I am asking." In no letter did the plaintiff ever suggest that Griffiths had made a bargain with him to pay a commission on the account of the Amalgamated Silk Corporation.

It is manifest that the evidence of defendant did not establish Griffiths' authority to bind his principal by the contract alleged by plaintiff. The testimony

that it is the general custom in the trade for the throwster to pay the "go-between" did not go to the question of Griffiths' powers. This suit is upon an express contract made by Griffiths. There is not only no evidence of his express or actual authority to make the contract, but no evidence of an instance in which he was held out by his principal as having authority to make contracts of the character described by plaintiff, or that he ever made a similar contract with plaintiff or anyone else, either with or without the knowledge or acquiescence of his company. Therefore, the verdict cannot be sustained upon the principle that apparent authority may be implied from a course of dealing. It follows that the making of the contract was beyond the scope of his apparent, as well as his actual, authority. In the language of President Judge RICE in Fee v. Adams Express Co., 38 Pa. Superior Ct. 83, 92, "the case is not within the doctrine of those cases in which it has been held that a principal is, generally, responsible for and bound by those acts of his agent done in the course of the agent's employment, and within the scope, or apparent scope, of his authority, although there may be, as between the principal and agent, a restriction upon that authority, or although the specific act for which it is sought to hold the principal liable was not in fact authorized." The extent of Griffiths' power, since proof of it depends on parol, and the facts are undisputed, is to be determined as a matter of law: Long v. Lehigh C. & N. Co. of N. E., supra. Defendant's point for binding instructions should have been affirmed.

This conclusion makes it unnecessary for us to consider the questions raised by the other assignments of error.

The first assignment is sustained and the judgment is reversed and here entered for defendant.