# Hoskins *v.* Peoples, Appellant.

*Negligence—Principal and agent—Evidence as to agency—Cleaning streets—Flushing pavement—Fright of horse.*

1. In an action against a firm of contractors for cleaning city streets, to recover for the death of a horse frightened by the sudden flushing of a street, the agency of the workman who flooded the street, with the defendants, may be shown by proof of his garb, that he was in possession of the usual and appropriate tools, and that both uniform and tools were openly and visibly marked with the names of the defendants. When such evidence is produced it is not reversible error to admit in evidence the declaration of the workman that he was in fact an employee of the defendants.

2. Where a workman employed by contractors engaged in cleaning the public streets, flushes a street, and as a result a horse is frightened, runs away and is killed, the owners of the horse before they can recover from the contractors, must show that the manner in which the workman used the water was unusual and extraordinary.

3. The use of the water was a matter of right and in the line of the duty of the workman and his employers towards the city and the public.

Argued Oct. 15, 1909. Appeal, No. 111, Oct. T., 1909, by defendants, from judgment of C. P. No. 4, Phila. Co., June T., 1906, No. 1,768, on verdict for plaintiff in case of Atwood B. Hoskins v. Robert J. Peoples et al., trading as Peoples Bros. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for the death of a horse. Before CARR, J.

The facts are stated in the opinion of the Superior Court.

At the trial the court admitted under exception and objection evidence that the defendants' names were on the tools of the man who turned on the water, and also upon his uniform (1–3).

The court charged in part as follows:

On the other hand, you must consider that fact as has been argued before you, that it was a distance of 250 feet to where the plaintiff's horse was standing. This fact also you will take into consideration in determining whether a reasonably cautious person should or should not have seen the horse there and have anticipated that this accident would have happened. [But the fact of distance alone is not enough of itself to excuse, because if, for instance, a man were to throw a brick or shoot a cannon and someone at a distance was injured, he might not have seen or known the person was there, but the question would arise whether it was the act of a reasonably cautious person in firing a cannon, under all the circumstances of the case.] [4] Therefore I repeat these are the principles as to negligence, and you must make up your minds whether or not under all the facts of the case the act of opening the plug in that way at that time, with that quantity of water, was the act of a reasonably cautious person. If you find it was a negligent act, of course the verdict should be for the plaintiff, provided there was no contributory negligence on his part. Now, as to that. If he had driven his horse into the stable, the accident would not have happened, or possibly if he had left someone in charge of it, the accident possibly would not have happened. But what he did is for you to pass upon, whether he did what a reasonably cautious person would have done. Assuming there was negligence on the part of the defendant in opening the water at that time and

place, it then becomes a question of fact for you to decide whether in tying this horse as he did was the act of a reasonably cautious person, under the circumstances. If you find there was negligence, and if you find, leaving the horse there unattended and so tied, as has been described, or so fastened, was not the act of a reasonably cautious person, your verdict should be for the defendant. I think those are the points of law in the case.

Defendant presented these points:

1. If the jury believe that the fire plug was located some 250 feet from the place where the horse was tied, the distance was too great for the ordinary, reasonable man to expect that the frightening of an ordinarily gentle and well-trained horse would be the natural and probable consequences of his act of turning on the plug and your verdict should be for the defendants. *Answer:* Refused. [5]

2. Unless the jury believe that there was something extraordinary in the turning on of the plug, something different from the usual turning on of fire plugs to flush the streets, the defendants were within their duty and your verdict should be for the defendants. *Answer:* Refused. [6]

3. If the jury believe that it was the duty of the defendants to flush the streets under their contract with the city and were doing that work in the usual and customary way, your verdict should be for the defendants. *Answer:* Refused. [7]

Verdict and judgment for plaintiff for $1,500. Defendants appealed.

*Errors assigned* among others were (1–3) rulings on evidence, quoting the bill of exceptions; (4–7) above instructions, quoting them.

*Henry H. Farley*, with him *Edward D. West*, for appellant.—There is certainly no question better settled in Pennsylvania than that agency cannot be proven by the

declaration of the agent: Plumsted v. Rudebagh, 1 Yeates, 502; Stewart v. Machine Co., 200 Pa. 611; Singer Mfg. Co. v. Christian, 211 Pa. 534; Hershinger v. Penna. R. R. Co., 25 Pa. Superior Ct. 147; Connor v. Penna. R. R. Co., 24 Pa. Superior Ct. 241; Hennessey v. Baugh & Sons Co., 29 Pa. Superior Ct. 310.

The fifth, sixth and seventh assignments of error, wherein it is contended that the learned court erred in declining the defendants' first three points, it is respectfully submitted that these points are clearly within the range of Piollet v. Simmers, 106 Pa. 95; Hazel v. Ry. Co., 132 Pa. 96; Yingst v. Ry. Co., 167 Pa. 438.

*Ruby R. Vale,* for appellee.—The facts of this case made it imperative for the court to submit to the jury the question of the standard of duty which the appellants owed to appellee: Schum v. R. R. Co., 107 Pa. 8; Pennsylvania R. R. Co. v. Coon, 111 Pa. 430; McKee v. Bidwell, 74 Pa. 218; Phila. & Reading R. R. Co. v. Spearen, 47 Pa. 300; Hays v. Paul, 51 Pa. 134.

It is submitted that it is not a justification that the act producing the injury was lawful or done in exercising a lawful right, if the injury arose from doing it negligently: Penna. R. R. Co. v. Barnett, 59 Pa. 259; Penna. R. R. Co. v. Horst, 110 Pa. 226; Webb v. Ry. Co., 202 Pa. 511.

The relation of master and servant between the appellants and the doer of the negligent act are conclusively proved by competent evidence: Hershinger v. R. R. Co., 25 Pa. Superior Ct. 147; Reel v. Adams Express Co., 27 Pa. Superior Ct. 77; Corpies v. Sand Co., 31 Pa. Superior Ct. 107; Hennessey v. Baugh & Sons Co., 29 Pa. Superior Ct. 310; Sarver v. Mitchell, 35 Pa. Superior Ct. 69.

OPINION BY HEAD, J., May 12, 1910:

At the trial the plaintiff offered evidence, not contradicted, which tended to establish that he was the owner of a well-bred

and well-broken horse of gentle disposition and accustomed
to the sights and sounds to be ordinarily encountered on the
streets of a city.   On a spring morning his brother, who was
a veterinary surgeon, drove the horse to Fortieth street—
between Walnut and Locust—in the city of Philadelphia, and
hitched him to a telegraph pole standing along the western
side of said street near a livery stable which he intended to
visit.   The pole was provided with a chain secured to it by
a ring, apparently intended for the convenience of the pro-
prietors of the stable or their patrons.   Having thus hitched
the horse, the driver left it and went into the stable to attend
to the business which had taken him there.

The city of Philadelphia had entered into a contract with
the defendants to clean its streets in the section embracing the
portion of Fortieth street above mentioned.   On the north-
east corner of Locust and Fortieth streets stood a city water
plug.   It was distant from the telegraph pole mentioned about
250 feet.   The traffic on Fortieth street being southward, the
horse, as he stood hitched, faced the water plug.   Whilst the
driver was in the stable a man clothed in the familiar white
uniform worn by those who clean the streets came to the plug
and opened it to its full capacity.   The name of the defendant
firm was stenciled on the clothes and cap which he wore, as well
as on the wheelbarrow, brooms and other tools he had with him.
He was, of course, provided with the necessary mechanical con-
trivance to open the water plug.   The water thus suddenly
given full head, shot across the street, and when met by the
curb on the west side formed a rapid flowing stream five or six
feet in width and perhaps six inches in depth.   This stream,
carrying on its surface paper, sticks and other débris of the
street, moved swiftly down along the west side of it towards
the hitched horse.   As it approached him he began to rear and
prance, and having finally pulled the ring from the pole, ran
away carrying the· chain with him.   He first collided with a
wagon, as a result of which the buggy was demolished and most
of the harness stripped from him.   Continuing his flight, he ran
into another wagon at the cross street and broke his leg, as a
consequence of which he had to be shot.   The driver of the

horse, hearing the noise of the runaway, went to the door of the stable and saw his horse going down the street.  He followed him to the point where he was finally injured and had to be killed.  He then returned to the plug and questioned the man who had opened it, who then admitted that he was an employee of the defendants.  It was further testified that this man was engaged in taking care of the section of the street at that point and had been seen working there off and on prior and subsequent to the accident.  The plaintiff, alleging that the loss of his horse was due to the negligence of the defendants' servant, brought this action to recover its value.  The trial resulted in a verdict and judgment for the plaintiff and the defendants appeal.

The first three assignments of error are based upon the action of the learned trial court in admitting evidence of those facts above recited tending to show that the individual who turned on the stream of water was a servant of the defendants.  The supporting argument, however, is confined chiefly to that portion of it tending to prove the fact by the declarations of the alleged servant.  Had there been no other evidence as to the relation of master and servant save only the declaration of the alleged servant, the evidence would have been clearly inadmissible.  But here the independent facts from which the inference of such relation may be drawn amount to much more than a scintilla.  The defendants had entered into a formal contract with the city in accordance with which they assumed, for that section, the city's obligation to clean its streets.  The individual in question was engaged in the performance of work necessary in the discharge of that contract.  He was doing this work, not clandestinely but openly; he was clad in the garb usually worn by those doing such work; he had in his possession the usual and appropriate tools, and both uniform and tools were openly and visibly marked with the names of the defendants.  · If, in the absence of any denial whatever by the defendants, a jury could not fairly infer from these facts the existence of the relation of master and servant, it is hard to see how that fact could be established short of direct evidence of the employment of

the individual by the defendants. We think the learned trial court could not have properly rejected this independent proof of agency, and this being true, there was certainly no reversible error in receiving the declarations of the person whose agency had thus been otherwise established: Singer Manufacturing Co. v. Christian, 211 Pa. 534; Stewart v. Climax Road Machine Co., 200 Pa. 611. The first three assignments must therefore be dismissed.

The right of a city to clean its streets is not only a necessary function of the municipality, but in the light of modern scientific knowledge the frequent exercise of that right becomes a duty of paramount obligation. In the discharge of this obligation the city must have the right to use the means ordinarily and reasonably adapted to accomplish the object in view. It was of the first importance, therefore, that the jury be carefully instructed that no negligence could be imputed to the defendants merely from the fact that they, acting under the city's authority, had used the said water supply for the purpose of cleaning the streets. Every individual citizen, exercising his right of passage over the streets, could enjoy such right only in subordination to the paramount right of the city to keep its streets free from filth.

But even in the exercise of the clearest right or the performance of the most obvious duty, the city or its contractors would be bound by the general obligation to act with due care according to the circumstances. A failure to recognize this obligation would be negligence. No conclusion of negligence, therefore, could be predicated merely on the fact that the defendants undertook to perform their duty while the plaintiff's horse stood hitched on the street, nor on the doing of any act ordinarily incident to the reasonable and proper performance of that duty.

The burden then was on the plaintiff to show that his injury resulted from something else than the mere exercise, in a proper and ordinary way, of the city's right to clean its streets. Recognizing the existence of this burden, he founded his cause of action, not on the bare fact that the defendants were engaged in the exercise of the city's lawful right, but on the

allegation that they "negligently and carelessly and without regard for the safety of persons lawfully using the same (the street),turned on the water, . . . . in close proximity to the place where said horse and carriage were standing, in such manner as to permit the water therefrom to be hurled in a great volume and with great force and noise across the said street," etc.

That it was possible for the defendants to abuse their right and be guilty of negligence, even in the performance of a recognized duty, could scarcely be denied. But such negligence could not be inferred merely from the fact that the plaintiff suffered an injury. It was incumbent upon him to offer evidence from which a jury could reasonably infer that the manner in which the defendants on this occasion used the water was unusual and extraordinary. We think the record discloses a sufficient amount of evidence tending to establish this fact to necessitate a submission to the jury of the question of the defendants' negligence. The plaintiff's brother testified that when he came to the door of the stable he saw that "a large volume of water was passing in front of the door that subsequently measured before it dried off, at a point 150 feet away from the plug, it was more than five feet six inches wide and the volume of water which passed at that time was more than six inches deep." In answering the question, "Was there anything in this flushing of the street that in your judgment caused this horse to run away different from the ordinary flushing?" the witness said, "I think it was the volume of water, the great force with which it was thrown," etc. He further declared that the noise made by the water was very noticeable and very loud because he—defendants' employee—was sending apparently the full force. Charles Schule, an employee in the livery stable, testified that at the time the horse broke loose the water was flowing along the side of the street in a stream from four to five feet wide with papers, sticks, etc., floating on the current. When asked if he had ever seen, in that neighborhood or in other parts of the city, the streets flushed with such a great volume of rapidly moving water, he answered that he had not. William Carson,

a landscape architect, driving along the street in a florist's wagon just about the time the plaintiff's horse broke loose, was asked this question, "Q. .Just tell the court and jury about the great volume of water, how great the volume of water was in width in that street? A. It was coming down clean over the curb on the west side of the street and clean out to the car track, and our horse would not go through it. The water was coming across the street." This was the whole of the testimony produced by the plaintiff to support the allegation in the statement of claim we have quoted. Whilst it may be said that it is somewhat scant in quantity and convincing power, we are nevertheless constrained to say that it amounted to more than a scintilla, and therefore that the court could not have properly withdrawn the case from the jury on the ground that there was no evidence to support the allegation of the defendants' negligence.

With the evidence in this state the defendants, by their second point asked the court to instruct the jury that, "Unless the jury believe that there was something extraordinary in the turning on of the plug, something different from the usual turning on of fireplugs to flush the streets, the defendants were within their duty and your verdict should be for the defendants." As we construe this point it correctly defined the true line of inquiry the jury should have followed, and was but a prayer for the application to this case of the principle we have already stated. Its refusal warranted the erroneous conclusion that even though the defendants had exercised their right to use the said water supply to clean the streets only in the ordinary and usual manner, they could still be found guilty of negligence. The same may be said of the third point and its refusal.

Nor was the learned trial court fortunate in the illustrations selected to define to the jury the character of the defendants' act. "But the fact of distance alone is not enough, of itself, to excuse because if, for instance, a man were to throw a brick or shoot a cannon and some one at a distance was injured, he might not have seen or known the person was there, but the question would arise whether it was the act of a

reasonably cautious person in firing a cannon under all the circumstances of the case." A jury might readily assume that either of the acts referred to, done on the streets of a large city, would likely be both voluntary and reckless and would properly subject the actor to liability for injurious consequences. But the act of the defendants' servant, in turning on the water to clean the streets, was the exercise of a right, the discharge of a duty to the city and all of its people collectively. If there was negligence it could be found only in an abuse of the right, in the creation of unusual and extraordinary incidents and from these the injury must have resulted. The portion of the charge complained of in the fourth assignment was therefore misleading and harmful to the defendants.

The plaintiff violated no law or city ordinance when he hitched his horse as he did. Of course he could not thereby stop the ordinary activities of the city and assumed the risk of his horse taking fright at any of the sights or sounds reasonably and ordinarily incident to such activities. Whether the horse was securely hitched, whether the ring in the pole was heavy enough for the purpose, these and like questions were for the jury.

So too the exact measure of care the defendants should have exercised under the circumstances could not be defined as matter of law. Its ascertainment involved an appeal to the standard of the ordinary, usual and reasonable, and this could be properly applied only by the jury after being duly instructed as to the controlling legal principles.

The fourth, sixth and seventh assignments are sustained; the remaining ones are overruled.

Judgment reversed and a venire facias de novo awarded.