# Curran v. The National Life Insurance Company of the United States of America, Appellant.

*Insurance — Accident insurance — Unsigned beneficiary supplement — Extra premium — Nonpayment — Rebate — Act of May 3, 1909, P. L. 405—Beneficiary clause—Construction—Death of beneficiary—Case for jury.*

1. Where a policy of insurance provides that no change therein should be valid unless endorsed by an officer of the company, and the policy with an unsigned supplement or rider attached is duly delivered to the insured, the supplement will be construed as part of the contract, notwithstanding any provisions to the contrary in the policy; the insurance company in such case will be taken to have waived the signing of·the supplement by an officer.

2. A policy of accident insurance required the payment of thirty cents additional premium for beneficiary insurance, which was paid by the insured. Upon the expiration of the policy another was issued naming a consideration which included the additional premium charged for beneficiary insurance; subsequently the policy was annually renewed with a beneficiary clause attached as a rider, but the premium fixed in the policy did not include the extra sum charged for beneficiary insurance. In an action on the policy brought by the insured to recover for the death of the beneficiary, it appeared that accident companies did not have a fixed schedule of rates for beneficiary insurance; that the lower rate was allowed plaintiff with the consent of the secretary of defendant company, and that the reduction was not made as an inducement to take out the insurance, as the policy had already been renewed. *Held,* that plaintiff was not precluded from recovery by the Act of May 3, 1909, P. L. 405, prohibiting the giving of any bonus or rebate not specified in the contract, as an inducement to persons to become insured.

3. In such case it appeared that the beneficiary clause extended the policy so as to cover bodily injury to the beneficiary "in consequence of the burning of a building while said beneficiary is therein"; that plaintiff on the night of the accident, being awakened by a scream, went in the direction of his mother's room and found the beneficiary, his sister, in the hall with her clothes on fire, that on entering his mother's room he found the door and wall near the bed blazing, the lounge smoldering, and the carpet burned. It did not appear whether the fire was communicated to the beneficiary from the burning building or from the burning contents of

the building. Plaintiff's theory was that ·beneficiary was burned in an unsuccessful attempt to reach her mother by fire communicated from the blazing walls. Defendant's theory was that the mother's clothing caught fire at the grate, and that the beneficiary was burned thereby, in her efforts to save her mother. *Held,* the question was not whether the circumstances exclude every other hypothesis, but whether they fairly supported the theory advanced by plaintiff and excluded by their preponderating weight the theory advanced by the defendant.

*Insurance—Notice of accident—Proof of loss—Delay—Reasonableness — Actions — Prematurity of action — Denial of liability — Waiver—Agency—Ratification—Case for jury.*

4. Where a policy of insurance requires immediate notice of loss to be given the company, the general rule of construction is that notice must be given within·a reasonable time after the accident; what is reasonable must, necessarily, depend upon the facts and circumstances of each particular case.

5. In such case, the policy required that "immediate" written notice be given the company of any accident for which indemnity was claimed, together with full particulars. It appeared that notice of loss was not mailed until almost three months after the accident; plaintiff testified that the policy was in the beneficiary's possession and that all renewal receipts were given to her and that owing to the transfer of the policy, he did not know the name of the company carrying the insurance, or that the accident in question was covered by the policy, and that as soon as the policy was found, the company was notified. *Held,* that there was no such unreasonable delay on plaintiff's part in making search for the policy and in notifying defendant after finding it, as would warrant the court in declaring, as a matter of law, that plaintiff should not be permitted to recover.

6. Where, in such case, the policy required that proof of loss be furnished within two months from the time when the loss occurred, the fact that the proofs were not forwarded until twenty-four days after notice of the accident was sent, did not necessarily preclude plaintiff from recovery, where it appeared that the proofs of loss were sent to defendant company as soon as plaintiff could obtain the signature of the physician who attended the beneficiary. As the policy did not expressly make the furnishing of proofs of loss within the stipulated time a condition precedent to the right of recovery, it was for the jury to determine whether the proofs of loss were furnished within a reasonable time.

7. A provision in a policy of insurance, stipulating that legal proceedings should not be brought until three months from the

day of filing proofs of loss at the company's office, will not preclude recovery in an action brought within the three months from the filing of the proofs of loss, where it appears that the company denied liability on the policy prior to the expiration of the time stated.

8. Where, in such case, it appeared that defendant's attorney visited the scene of the fire, and subsequently informed plaintiff that "the company could not do anything for you" and that the company wrote plaintiff that "upon the report of our adjuster and reports of investigations subsequently made, we cannot entertain your claim," there was sufficient evidence to warrant the jury in finding that the agent was authorized to represent the company in denying liability on the policy within three months from the time of filing proofs of loss, or that the company ratified his denial of liability, if made without authority, and a judgment on a verdict for plaintiff, was affirmed.

Argued Oct. 7, 1915. Appeal, No. 81, Oct. T., 1915, by defendant, from judgment of C. P. Washington Co., Aug. T., 1913, No. 210, on verdict for plaintiff, in case of William F. Curran v. The National Life Insurance Company of the United States of America. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Assumpsit on a policy of accident insurance. Before MCILVAINE, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $2,600 and judgment thereon. Defendant appealed.

*Errors assigned* were answers to points, the refusal of the court to direct a verdict for defendant, to enter judgment for defendant n. o. v., instructions to the jury and rulings on evidence.

*J. B. Boyer,* with him *Samuel Amspoker,* for appellant.—The defendant was entitled to binding instructions because there was no binding contract legally in evidence: American Underwriters' Assn. v. George, 97

Pa. 238; American Car & Foundry Co. v. Alexandria Water Co., 221 Pa. 529; Balto. & Ohio Employees' Relief Assn. v. Post, 122 Pa. 579; Robb v. Millers' Mutual Fire Ins. Co., 230 Pa. 44; Penman v. St. Paul Fire & Marine Ins. Co., 216 U. S. 311.

The beneficiary supplement was without consideration and void: Lantz v. Vermont Life Ins. Co., 139 Pa. 546; Brady v. Northwestern Masonic Aid Assn., 190 Pa. 595; Marland v. Royal Ins. Co., 71 Pa. 393.

The alleged oral agreement between the agent and an employee of the Pittsburgh Casualty Company that the premium for beneficiary insurance should not be charged was in violation of the Act of May 3, 1909, P. L. 405, and void: Reed v. Philadelphia Life Insurance Co., 50 Pa. Superior Ct. 384; Rideout v. Mars, 99 Miss. 199 (54 So. Repr. 801); State Life Insurance Co. v. Strong, 127 Mich. 346 (86 N. W. Repr. 825); In re Philadelphia Life Insurance Co., 34 Pa. C. C. 215; Baldwin v. Penna. Fire Ins. Co., 20 Pa. Superior Ct. 238; Miller v. Interstate Casualty Co., 17 Pa. Superior Ct. 360.

The evidence does not exclude any explanation other than that the beneficiary was burned after the building caught fire; the case should, therefore, have been withdrawn from the jury: Philadelphia City Pass. Ry. Co. v. Henrice, 92 Pa. 431; Keefer v. Pacific Mutual Life Ins. Co., 201 Pa. 448.

The plaintiff cannot recover because of his failure to furnish both notice and proof of loss as required by the agreement: Keefer v. Pacific Mutual Life Ins. Co., 201 Pa. 448; Bube v. Weatherly Boro., 25 Pa. Superior Ct. 88; United States Fidelity & Guaranty Co. v. Des Moines Nat. Bank, 145 Fed. Repr. 273; Globe Accident Ins. Co. v. Gerisch, 163 Ill. 625; Manning v. Insurance Co., 100 U. S. 693; Ruppert v. Brooklyn Heights Ry. Co., 154 N. Y. 90; Employers' Liability Assur. Corp. v. Taylor, 29 Can. Supreme Ct. Rep., 104; Underwood Veneer Co. v. London Guarantee & Accident Co., 100 Wis. 378; Victorian, Stevedoring & Gen. Contracting

Co., Ltd., v. Australian, Acc. Ins. & Gen. Guarantee Co., Ltd., 19 Vic. Law Rep., 139; London Guarantee and Accident Co. v. Siwy, 35 Ind. App., 340; Quinlan v. Providence Wash. Ins. Co., 15 N. Y. Supp. 317; California Savings Bank of San Diego v. Am. Surety Co. of N. Y., 87 Fed. Repr. 118.

*C. L. V. Acheson,* with him *J. Boyd Crumrine,* of *Acheson & Crumrine,* for appellee.—The testimony clearly shows that the policy of accident insurance with the clause of beneficiary insurance attached and made a part of it, upon which said policy the action was based, was delivered to and accepted by Curran as a binding contract: Myrick v. Purcell, 95 Minn. 133; Myers v. Keystone Mut. Life Ins. Co., 27 Pa. 268.

The premium for the beneficiary clause was included in the policy premium; one gross sum was fixed as the premium for both and no amount was apportioned for the beneficiary insurance: Gottsman v. Pennsylvania Insurance Co., 56 Pa. 210; Kelley v. Humboldt Fire Ins. Co., 34 P. L. J. 234; Philadelphia Fire Association, Trustees, v. Williamson, 26 Pa. 196.

The beneficiary was in the building at the time the fire occurred; it is not material that there was no direct evidence to show that fire in the wood work of the building preceded in point of time the injuries of the beneficiary, or that the injuries of the beneficiary were caused by a fire from the building, as distinguished by fire from its contents: Wilkinson v. Ætna Life Insurance Co., 240 Ill. 205; Preferred Acc. Ins. Co. v. Fielding, 9 A. & E. Ann. Cas. 916; 35 Colo. 19; Taylor v. General Acc. Assur. Corp., 208 Pa. 439; Hill v. Central Accident Ins. Co., 209 Pa. 632.

Although the policy required that immediate written notice of loss be given to the company, there is no prohibition against recovery of the amount due by reason of any failure to give such notice; the plaintiff's failure to file immediate written notice of loss, therefore, does

not of itself prevent recovery: Ben Franklin Fire Ins. Co. v. Flynn, 98 Pa. 627; Coventry Mutual Live Stock Ins. Assn. v. Evans, 102 Pa. 281; Lycoming Mut. Fire Ins. Co. v. Bedford, 2 W. N. C. 529; Peoples Accident Assn. v. Smith, 126 Pa. 317; Van Eman v. Fidelity & Casualty Co., 201 Pa. 537; Hughes v. Central Accident Ins. Co. 222 Pa. 462.

OPINION BY MR. JUSTICE FRAZER, January 3, 1916:

This is an action by the insured on a policy of accident insurance to recover for the death of the beneficiary named therein, under a beneficiary insurance clause attached to the policy. In 1908, plaintiff took out a policy in the Pittsburgh Life and Trust Company, which was in the usual form of accident policies and provided certain indemnities therein specified for death or injuries caused by "external, violent and accidental means." The premium specified was $22.00. To the policy was attached a "rider," by which, in consideration of 30 cents extra premium, the policy was extended to cover bodily injury to the beneficiary, in this case the sister of the insured, sustained through external, violent and accidental means and under circumstances stated, among them being injuries sustained "in consequence of the burning of a building while said beneficiary is therein."

The following year plaintiff, upon request, consented to transfer his insurance from the Pittsburgh Life and Trust Company to the Pittsburgh Casualty Company. The former company having reinsured its entire business, including plaintiff's policy, in the latter, and subsequently the latter having issued to plaintiff its own policy in lieu of that of the Pittsburgh Life and Trust Company, this later policy was assumed by the National Life Insurance Company, the defendant. The premium, $22.30, plaintiff paid, on the day of delivery of the policy or a day or two before, to the agent of defendant company. There was also a beneficiary insurance attached to the policy identical with the one in the original, ex-

cept that it recited the consideration as follows: "In consideration of $ (included) extra premium." This policy was renewed in July, 1910, "in consideration of $22.00." Further renewals for the same consideration were made in the years 1911 and 1912. In the original policy of 1909 the beneficiary rider bore the name of the company and its president but in the later policy the name of the company only appeared, followed by a blank line under which was the word "secretary." The policy itself was signed at the end, however, by both president and secretary and countersigned by the local agent from whom procured. Objection was made at the trial because of the absence of the signature to the beneficiary supplement and because of a provision in the policy that no change should be valid unless endorsed by an officer of the company. It was also contended by defendant that failure to pay the 30 cents premium on the beneficiary insurance invalidated that part of the policy. The court admitted the policy, refused a point asking for binding instructions for defendant, and left to the jury to say, in view of the testimony, whether the policy was actually delivered by defendant to plaintiff as a binding contract, without signature on the beneficiary contract and upon payment of $22.00. The jury found in favor of plaintiff and a motion for judgment non obstante veredicto was subsequently overruled.

Defendant's agent Lloyd, whose depositions were taken by plaintiff and read at the trial, testified the 1909 policy was prepared at the office of the company in Pittsburgh and forwarded to him with the beneficiary clause attached, but unsigned, and he delivered it to plaintiff who paid him the premium of $22.30, the amount necessary to cover the beneficiary insurance. If the policy was delivered to plaintiff as a completed contract defendant would be estopped from denying it after a loss has been sustained. In such case the attached supplement, though unsigned, should properly be construed as a part of the entire contract (Myers v. Keystone Mut.

Life Ins. Co., 27 Pa. 268,) notwithstanding any provision to the contrary, which the company issuing the policy will be held to have waived by its own conduct. We think the trial judge gave defendant the benefit of every advantage when he left to the jury the question whether the policy was delivered by defendant to plaintiff with the intention that it should become effective as a binding contract upon payment of the premium, and instructed them that the signature of the secretary on the beneficiary clause pasted on the second page of the policy was not necessary if the parties saw fit to dispense with it.

The contention that the beneficiary insurance is without consideration to support it and therefore void is equally without merit. The original policy required the payment of 30 cents additional premium for the beneficiary insurance. At the time the policy was transferred from the Pittsburgh Life and Trust Company, the beneficiary policy was in force. When the policy in suit was issued for the year 1909, the consideration named therein included 30 cents for the beneficiary insurance, which was paid by plaintiff. It appears, therefore, a gross sum was fixed as the premium for both risks and the consideration was not apportioned between the two. The contention that the one was unpaid is therefore without support. While plaintiff admits that only $22.00 was in fact paid for subsequent annual renewals, this is explained by the testimony of defendant's agent, who stated the company in which he originally insured plaintiff charged but $22.00, without an extra sum for the beneficiary insurance, and he desired to secure for him the same rate; and further that accident companies did not have a fixed schedule of rates for beneficiary insurance. This witness also testified it was at that time optional with accident insurance companies whether a charge was made for beneficiary insurance, some requiring a payment and others not. He took the matter up with the secretary of defendant company and

they agreed to relieve plaintiff from payment of the additional 30 cents. This reduction, according to the agent's testimony, which corroborates plaintiff's testimony on this point, was not made as an inducement to plaintiff to take out the insurance, as the policy had already been renewed. The case does not therefore fall within the Act of May 3, 1909, P. L. 405, prohibiting the giving of any bonus or rebate, not specified in the contract, as an inducement to persons to become insured.

The next contention of defendant is, plaintiff failed to show that death of the beneficiary was caused solely by bodily injuries sustained through the "burning of a building while the beneficiary was therein," within the meaning of that clause in the policy. There is no living witness to the unfortunate accident. The insured lived with her mother and two brothers in the Borough of Washington, and on the night of the fire had retired to her room on the second floor. The mother slept in the sitting room on the first floor, on a lounge which stood in a corner of the room, eight feet from an open grate, in which there was a coal fire burning at the time, which was the only fire of any kind in the room and the only place from which the fire could have originated so far as the evidence shows. Plaintiff slept on the second floor, and testified he retired about ten o'clock leaving his sister and mother in the sitting room. Later he was awakened by a scream and upon hastening to the first floor found his sister in the hall with her clothes on fire, and upon attempting to enter the sitting room saw his mother in her night clothes standing near the lounge, but was unable to reach her until water was obtained from the bath room on the second floor and the fire at the door leading into the room extinguished. At the time he first entered the room the door and the wall in the corner near her bed were blazing, the lounge smouldering, and the carpet burned in several places. It does not appear how the sister's clothing caught fire or when she first entered her mother's room. Plaintiff testified he sup-

posed she had gone to the bath room or the bed room on the second floor, and attracted by the cries of her mother or the smell of smoke had returned to the first floor to investigate. Certainly but a short time elapsed between that time and when her scream awoke plaintiff. Plaintiff's theory is that the room or its contents caught fire from the grate and the flames were communicated to the bed on which the mother was sleeping. Defendant's theory is that the mother's clothing caught fire at the grate and the flames were communicated from her to the daughter in the latter's efforts to save her mother, and that the daughter's death was not caused by the burning of the building, or, at all events, inasmuch as one theory is as consistent as the other, plaintiff failed to meet the burden cast on him of proving how the accident happened. The fact that the door and walls of the room were ablaze to a greater extent than the bed at the time the brother discovered the fire certainly lends support to the theory of plaintiff that the fire was communicated from the open grate to the building and then to the mother. Furthermore, the extent to which the fire had advanced when the sister came from the room, and the relatively short space of time which must have elapsed from the time plaintiff's sister was burned to the time her scream was heard, indicate the house must have been burning when she arrived on the scene. Plaintiff attempted to reach his mother but was unable to do so because of the fire, and it may fairly be inferred his sister was burned in an unsuccessful attempt to do the same, in which case her injuries were received through the burning of a building while she was in it, regardless of the original cause of the fire, and the jury were justified in drawing this inference. The question is not whether the circumstances exclude every other hypothesis, but whether they fairly support the theory advanced by plaintiff and exclude by their preponderating weight the theory advanced by defendant.

To hold as matter of law that plaintiff failed to prove

sufficient facts to take the case to the jury, would prevent recovery in most cases of this kind, because of the difficulty of proving the origin of the fire, thus imposing on the policyholder a burden not contemplated by the contract. Defendant insured against bodily injury sustained through "the burning of a building, while the beneficiary is therein." The burning of the building and the presence of the beneficiary therein is conceded, the only question being as to the manner in which the fire was communicated to the insured, the proof as to this being purely circumstantial. "In a question of circumstantial evidence, the proof derived from the circumstances is a question of natural presumption, and is to be found by the jury. The strength of the proof depends on the probability resulting from the facts. The presumption thus arising, being a natural one, is to be determined necessarily by the jury, and not by the court. It is the right of the party to have this submitted to the jury, unless it be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. If in such a case as this we say that all the combined circumstances afford no evidence, we take from the party the right of trial by jury, a right of the utmost importance in a matter in which the natural instinct and judgment of men are the legal and constitutional right of a party": Brown v. Schock, 77 Pa. 471, 479. Defendant's rights were carefully and amply safeguarded in the charge, and the question was for the jury: Taylor v. General Accident Assurance Corporation, 208 Pa. 439; Hill v. Central Accident Ins. Co., 209 Pa. 632.

It is also contended plaintiff failed to furnish notice of loss within the time required by the policy, and the trial judge should have so decided as matter of law. The accident occurred February 1st and notice was mailed April 27th. The policy required "immediate written notice must be given the company" of any accident for which indemnity is claimed, together with full particu-

lars. As a reason for delay, plaintiff testified the policy was in possession of his sister, the beneficiary, and all renewal receipts were also given to her. After the accident he was so prostrated he had no thought of insurance for some time, and owing to the transfer of the policy did not know the name of the company carrying the insurance. As soon as the policy was found, it was taken to his attorney who notified the company at once. On cross-examination he testified to making search for all the papers at different times and finally discovering them in a wardrobe in his own room, and further that he was not positive whether the particular accident was covered by insurance until the policy was found. We cannot say, under the circumstances, the delay in notifying the company was so great the court should have decided as matter of law there could be no recovery. The general rule of construction, where a policy requires immediate notice, is that notice must be given within a reasonable time after the accident, and what is reasonable must necessarily depend upon the facts and circumstances of each particular case: People's Accident Assn. v. Smith, 126 Pa. 317; Hughes v. Central Acc. Ins. Co., 222 Pa. 462; Solomon v. Continental Fire Ins. Co., 160 N. Y. 595; Woodmen Accident Assn. v. Pratt, 62 Neb. 673. In the present case there appears to have been no such unreasonable delay on plaintiff's part in making search for the policy, and in notifying defendant after finding it, as would warrant us in saying as matter of law he should not be permitted to recover.

The policy also required proof of injury to be furnished to the company within two months from the time it occurred. The proofs were forwarded on May 21st, twenty-four days after notice of the accident was sent. The blanks on which proofs of loss were made were received by plaintiff's attorney from defendant's attorney. There was some delay in procuring the signature of the doctor who attended the beneficiary, and plaintiff testified the papers were completed and sent to defendant

company as soon as could be done after the doctor's return. The same reasoning which would warrant the submission to the jury of the question whether notice was ·given within a reasonable time also prevents us from deciding as matter of law that the proofs of death were not furnished within proper time. The policy does not expressly make the furnishing of proofs of loss within the time stated a condition precedent to the right of recovery. For this reason the court below followed the case of Coventry Mut. Live Stock Ins. Assn. v. Evans, 102 Pa. 281, where, under similar circumstances, it was held the question whether notice was given within a reasonable time was for the jury, though the policy itself required notice within twenty-four hours. It was there said, at page 285, "If the defendant could show it had sustained any damage on account of plaintiff's breach of condition, it might defend against the policy to that extent." The general rule is that where the delay in furnishing proofs of death or the giving of notice is due to circumstances not attributable to neglect or bad faith on the part of · plaintiff and the required proofs or notice were in fact furnished within a reasonable time under the circumstances, failure to file within, the time stipulated is excusable. An illustration of this rule is found in Continental Casualty Co. v. Lindsay, 111 Va. 389, where the beneficiary named in a policy of accident insurance did not know of the existence of the policy until several months after the death of the insured. In that case it was said (page 390) : "We are of opinion that when the existence of an insurance policy is not known for several months after the death of the insured, and the beneficiary therein, as soon as the policy is found, gives notice to the company, then all has been done that could be required under the circumstances. It would be a, harsh rule that would forfeit the policy because the beneficiary had not given notice within fifteen days after the accident, as prescribed in the policy, when she did not know of its existence for several months thereafter. Compli-

ance with the terms of a policy as to notice and proof of loss within a reasonable time after knowledge of its existence under all the circumstances of the particular case is all that is required."

The question of time of giving notice and furnishing proof of loss was discussed at length in Woodmen Accident Assn. v. Pratt, 62 Neb. 673, where the court made an extensive review of the American and English cases on the subject. After referring to the fact that the provision requiring notice is for the purpose of advising the insurer of the accident and extent of injury, in order to protect itself against fraudulent or improper demands, and that the provision requiring notice should therefore not be construed as a hard and fast rule admitting of no exception or excuse for failure to comply literally with its terms, the conclusion reached is thus stated on page 679: "In respect to the rule of construing provisions in a contract of insurance for notice of accident and injury or loss or damage and proof of the same to be given 'forthwith' or 'immediately' or within a stipulated time, the authorities are not entirely harmonious, and yet from the examination we have been able to make in the limited time at our command the great weight of authority is to the effect that the exercise of due diligence and reasonable effort on the part of the insured to meet the requirements thus imposed, to be determined under all the circumstances as disclosed in each individual case, is deemed a compliance with such provisions although not within the time according to the strict letter of the terms used in defining the same."

On page 686, it was further said: "From the foregoing, the conclusion is, we think, fairly deducible that in construing conditions in a policy of insurance with respect to the giving of notice of the happening of the event and the particulars thereof and preliminary proofs, to be complied with subsequent to the event resulting in loss or injury and for which indemnity is claimed, a more liberal construction in favor of the beneficiary

should be given than when the conditions are to be complied with prior to the happening of such event and for the purpose of continuing the policy in force and effect; that such provisions as to the time in which the notice is required to be given or proofs furnished are not necessarily and in every instance to be literally complied with in order to prevent a forfeiture of the policy, or entitle a party to recover for a loss or injury resulting from the happening of the event for which indemnity is claimed; that a reasonable and natural construction should be given such provisions in order to carry out the evident intention and manifest purpose of the parties to the contract and the object to be accomplished thereby; that when a time is fixed in a policy of accident insurance for the giving of notice of an accident and injury resulting therefrom for which indemnity is claimed, with the particulars thereof, which is reasonable in its character, this will be regarded as a condition precedent to be complied with before recovery can be had, but when, because of circumstances and conditions surrounding the transaction, obstacles or causes exist preventing and rendering impossible the performance of the act within the time stipulated, the act may be performed thereafter and the beneficiary will be excused for the failure, if done within a reasonable time, or within the time stipulated after the obstacle or cause preventing prior compliance ceases to exist, the question of the sufficiency of the excuse offered and the reasonableness of the time in which the act is performed to be determined according to the nature and circumstances of each individual case, the beneficiary in all cases being required to act with due diligence and without laches on his part."

A further question raised by the assignments of error is that the suit was brought prematurely and contrary to the provision in the policy providing that legal proceedings should not be brought until three months from the day of filing proofs at the company's office. A provision of this kind may, however, be waived by the com-

pany by denial of liability prior to the expiration of the time stated. Plaintiff testified that prior to the beginning of the action on the policy defendant denied liability; that this denial was made by the company's attorney, who visited the scene of the fire and informed plaintiff "the company could not do anything for you." While this statement is denied by the attorney it was under the circumstances necessarily for the jury. Defendant contends, however, there was no evidence of the attorney's authority to represent it in making the statement and that the declarations of the agent were not sufficient for this purpose. Mr. Boyer, the company's attorney, visited the Borough of Washington in reference to this claim and also in connection with other business, and, while there, called upon plaintiff and also examined the premises. While it is true the declarations of an agent are not competent to prove his authority, yet he is a competent witness for this purpose: Jordan v. Stewart, 23 Pa. 244; Lawall v. Gorman, 180 Pa. 532; Fee v. Adams Express Co., 38 Pa. Superior Ct. 83; and his statement that he was there for the purpose of looking after the matter on behalf of the company, together with the company's letter to plaintiff that upon "the report of our adjuster and reports of investigations subsequently made......we cannot entertain your claim," was sufficient evidence to go to the jury on the question of his authority, and also on the question of the company's ratification of his acts if done without authority.

What we have said above renders a further discussion unnecessary and substantially disposes of the other questions raised. The assignments of error are overruled and the judgment is affirmed.