## Commonwealth v. Goldstein.

*Criminal law—Larceny by trick—Principal and accessory—Statements of agent in procuring possession—Admissibility of—Res gestæ—Proof of agency by statements of agent—Testimony of accomplice—Charge of court.*

1. Whether one is guilty as principal or accessory, he is now properly indicted and tried as a principal under the Criminal Procedure Act.

2. Where a theft is committed through an agent by trick, the statements made by such agent, by means whereof the unlawful possession is secured, are admissible as part of the *res gestæ*, a part of the actual taking, the unlawful taking by trick.

3. In such case, the fact of agency must first be established by independent proof before such statements of the agent become admissible against the principal, but the agent is himself competent to prove such agency.

4. While true that agency cannot be established by statements of the alleged agent, yet the very fact that an agent made a statement may itself be proper evidence of such relationship. Thus the fact that the agents made statements to the custodian of rope, the subject-matter of the theft, at the time of the taking, disclosing where they could be apprehended, if thieves, was a fact or circumstance connected with the taking itself, warranting the inference that the taking, in so far as they were concerned, was an innocent taking, and this, in corroboration of their testimony, that they were but innocent agents of the defendant in the taking.

5. There is no rule of law which forbids a conviction on the uncorroborated testimony of an accomplice.

Conviction of larceny. Motion for new trial. Q. S. Washington Co., Feb. Sess., 1924, No. 40.

Argued before Brownson, P. J., and Cummins, J.

*Warren S. Burchinal,* First Assistant District Attorney, for Commonwealth.

*Carl E. Gibson* (of *Vance & Gibson*), for defendant.

CUMMINS, J.—Bennie Goldstein, a junk dealer, was indicted and tried on the charge of larceny. The property stolen consisted of a drilling cable and other rope belonging to an oil well driller by the name of Steele. A well having been completed on the farm of one Conklin, the drilling equipment was left at this well, Conklin agreeing with Steele to look after same. It was not claimed that Goldstein himself, by his own hands, took and carried away said rope, but that he had done so by two employees, Swan and Carington, sent by him to the Conklin farm for that purpose. The unlawful taking was not effected by stealth, but by trick, by having his said employees represent to Conklin that "they had an order from Steele to get the rope." Swan and Carington, who were called as witnesses for the Commonwealth, testified that

they had made such representations in good faith and at the direction of Goldstein, and were unaware that defendant had not in fact arranged with Steele for securing said rope. Among the statements made by Swan and Carington to Conklin, to induce him to permit them to take the rope, was one to the effect that "it didn't make any difference to him (Swan) whether he took it in himself or whether I (Conklin) took it down, he was getting paid by the day; and he also said if I ever had any junk, to bring it to the Monongahela City Junk Yard."

It is not very material, for the purposes of this case, however, whether Swan and Carington innocently or with guilty knowledge secured possession of the rope in question. If Goldstein's employees, being ignorant of the character of the act perpetrated, innocently effected this theft by trick, Goldstein would himself be the principal or actual perpetrator of the crime, and his employees but the innocent agents through whom he committed the act: State v. Shurtliff, 18 Me. 368; Bishop v. State, 30 Ala. 34; Blackburn v. State, 23 Ohio St. 146; Regina v. Bannen, 2 Moo. C. C. 309; May's Criminal Law, 51; Hale P. C., 514; Vaux Case, 4 Coke, 44; while, if Swan and Carington were aware that the taking was criminal, then they would be the principals and Goldstein an accessory before the fact. But, whether principal or accessory, defendant was properly indicted and tried as a principal; for an accessory before the fact, under section 44 of the Criminal Procedure Act of March 31, 1860, P. L. 427, 440, may be, and usually now is, indicted and tried as a principal: Brandt v. Com., 94 Pa. 290; Com. v. Bradley, 16 Pa. Superior Ct. 561; Campbell v. Com., 84 Pa. 187; Sadler on Criminal Procedure in Penna., § 44, page 125. In either event, Swan and Carington were the agents of defendant, either his innocent agents or, as his confederates, each the agent of the other. The jury returned a verdict of guilty. The case is now before the court on motion for a new trial.

The third reason assigned in support of defendant's motion complains of the court's ruling in permitting Conklin to testify to statements made by Swan and Carington, by means of which they secured possession of the property stolen, the court holding that these statements were admissible as part of the res gestæ; that they constituted a part of the actual larceny, the unlawful taking by trick. In this the court committed no error. The Commonwealth had previously shown by the testimony of Swan and Carington, who had been called as witnesses, that, in the taking, they were acting as the agents of and for defendant, to establish which fact they themselves were competent witnesses generally: Lawall v. Groman, 180 Pa. 532; Curran v. Insurance Co., 251 Pa. 420; Hileman v. Falck, 263 Pa. 351; Jordan v. Stewart, 23 Pa. 244; Fee v. Express Co., 38 Pa. Superior Ct. 83. And the fact that Swan and Carington were acting as the agents of defendant in the taking of this rope, having been first shown by competent evidence, it necessarily follows that any statement made by them incidental to and constituting a part of such actual taking would be admissible as part of the res gestæ: Oil City Fuel Co. v. Boundy, 122 Pa. 449; Com. v. Biddle, 200 Pa. 640; Singer Manuf. Co. v. Christian, 211 Pa. 534, 540; Curran v. Insurance Co., 251 Pa. 420, 435; B. & O. Relief Ass'n v. Post, 122 Pa. 579; Hannay v. Stewart, 6 Watts, 487; Mellick v. Railroad Co., 17 Pa. Superior Ct. 12; Shelhamer v. Thomas, 7 S. & R. 106; Patton v. Minesinger, 25 Pa. 393; Fee v. Adams Express Co., 38 Pa. Superior Ct. 83; Henry on Penna. Trial Evidence, § 76, page 80.

The same principle is involved whenever several persons conspire together to commit any crime—each becoming the agent of the other with respect to the criminal act to be committed, and everything said or done by any of them

in the furtherance of the common purpose is admissible against all: Com. v. Eberle, 3 S. & R. 9; Lowe v. Dalrymple, 117 Pa. 564; Hartman v. Diller, 62 Pa. 37; Scott v. Baker, 37 Pa. 330. And, moreover, whenever the fact of conspiracy (and resulting agency) is once established, the declarations of any one of the confederates, to be admissible, need not have been made in the presence of the others (McCabe v. Burns, 66 Pa. 356; Com. v. Biddle, 200 Pa. 640), but, as part of the res gestæ, is admissible, notwithstanding their absence: Heine v. Com., 91 Pa. 145; Com. v. Stambaugh, 22 Pa. Superior Ct. 386; Com. v. Zuern, 16 Pa. Superior Ct. 588.

The fourth assignment complains of the court's treating the testimony of Conklin, as to these statements made by Swan and Carington in securing the possession of the rope, as corroboration of the testimony of Swan and Carington to the effect that they were acting as the innocent agents of defendant. Let this distinction be carefully drawn, that it was not the statements themselves made by Swan and Carington, at the time of securing possession of the rope in question, which were treated by the court as corroboration of their agency, but the fact itself that they made such statements. The fact that they made statements to Conklin, from whose custody they secured the rope, disclosing the fact that they were from the Monongahela City Junk Yard, so that, if thieves, they could be easily apprehended. This was a fact or circumstance connected with the taking itself; a part of the res gestæ, warranting the inference that the taking, in so far as they were concerned, was an innocent taking, and this in corroboration of the testimony of Swan and Carington given upon trial, that they were but the innocent agents of defendant in that taking. The contents of the statements themselves implicated defendant in no way; but the fact that Swan and Carington made such statements was evidence of the absence of any criminal intent on their part. It was a verbal act. "What a man says when he does a thing shows the nature of his act and is a part of the act:" Rankin v. Tenbrook, 6 Watts, 388, 390. The inference, therefore, which the court suggested might be drawn by the jury was clearly warranted: B. & O. Relief Ass'n v. Post, 122 Pa. 579; Singer Manuf. Co. v. Christian, 211 Pa. 534, 540; Stewart v. Machine Co., 200 Pa. 611; Hoskins v. People, 42 Pa. Superior Ct. 611, 617; Fee v. Adams Express Co., 38 Pa. Superior Ct. 83; Curran v. Insurance Co., 251 Pa. 420, 435; Com. v. Storey, 49 Pa. Superior Ct. 282; 1 Greenleaf on Evidence (16th ed.), §§ 100 and 101, page 185; Henry on Penna. Trial Evidence, § 77, page 82; Hertzler v. Geigley, 196 Pa. 419.

The first, second, fifth, sixth and seventh reasons assigned in support of defendant's motion involve the question as to what weight should have been given to the testimony of Swan and Carington and the court's instructions with reference thereto. They may, therefore, be considered together. These several reasons in the main are predicated upon erroneous assumptions.

It is assumed that Swan and Carington were admitted accomplices, which is by no means borne out by the evidence, as by the weight of the evidence it would appear that they had been but innocent tools in the hands of Goldstein, and the jury would have been warranted in finding that defendant was himself the actual perpetrator and Swan and Carington but the innocent agents through whom he acted.

The next erroneous assumption is to the effect that the testimony of Swan and Carington was uncorroborated, whereas their testimony was in fact corroborated in almost all of its material parts. They testified that Goldstein had called on each of them at the junk yard that morning and directed them to get the rope; that he was to pay them by the day; that he gave them to

understand that he had arranged with Steele to secure this rope; that he directed Swan to drive the (defendant's) truck, and that Carington was to direct him to the farm and there help him; that they went to the Conklin farm, told Conklin where they were from, the location of the junk yard, and "that Mr. Steele had given them the order," "an order to get junk rope from that well;" that they then loaded the rope into the Goldstein truck, took it to the junk yard, put it in a garage stall and left the truck in the yard; that later, when Conklin and Steele came into the junk yard, Goldstein advised them (Swan and Carington) to avoid them, that there might be trouble over the rope, and advised them, when arrested, to deny all knowledge of it, and paid their attorney's fees for defending them, which latter fact was not denied.

In corroboration of these facts, Goldstein in his testimony admitted to having gone to see both Swan and Carington that morning; that Swan was in his employ; that he drove his truck that day, and was, during the day, in charge of his (defendant's) son; that when they were arrested, Swan said to him (Goldstein) that he had been arrested "for stealing that rope." Several eye-witnesses to the taking corroborated Swan and Carington as to the actual taking, and as to the statements made by them in securing possession of the rope and as to their statements as to where they were from, making their apprehension easy if their taking were unlawful, as evidence of lack of any guilty knowledge on their part, and in corroboration of their own testimony that they were acting as mere employees of Goldstein and without knowledge that the taking was unlawful. Conklin also testified that, upon going to the junk yard with Mr. Steele, he there found and identified the truck in which the rope had been hauled away, which truck was not in a garage, but out in the yard.

Even assuming that Swan and Carington were accomplices and that their testimony was uncorroborated, yet still "there is no rule of law in this State which forbids a conviction on the uncorroborated testimony of an accomplice:" Ettinger v. Com., 98 Pa. 338; Cox v. Com., 125 Pa. 94; Com. v. De Masi, 234 Pa. 570. And see Kilrow v. Com., 89 Pa. 480; Com. v. Craig, 19 Pa. Superior Ct. 81, 94; Com. v. Sayars, 21 Pa. Superior Ct. 75, 80; Com. v. Klein, 42 Pa. Superior Ct. 66, 81; Carroll v. Com., 84 Pa. 107; Hester v. Com., 85 Pa. 139; Com. v. Lord, 81 Pa. Superior Ct. 279. As was stated by Orlady, J., in Com. v. Sayars, 21 Pa. Superior Ct. 75: "It is well settled in Pennsylvania that, although the uncorroborated testimony of an accomplice should be received with caution, yet there is no rule of law forbidding a conviction upon his testimony alone."

In the instant case the court did caution the jury that where persons involved in crime or confessed criminals were called to testify, it was their duty to closely scrutinize such testimony in order to determine whether or not they were telling the truth, and that two of the Commonwealth's witnesses (Swan and Carington) had previously sworn falsely and that their testimony should be carefully scrutinized to determine whether it was trustworthy.

The complaint that the court in instructing the jury did not distinguish between the degree of caution which should be exercised in an examination of the testimony of Swan and Carington and that of the other witnesses is unfounded, as an examination of the court's charge shows the reverse of this, the court, by its charge, clearly indicating that a less degree of caution and scrutiny was required to be exercised in a consideration of the other testimony, the court charging that the jury had "a right to consider the testimony of every witness to a certain extent in the same manner." No points were presented or request made for additional instructions.

Commonwealth v. Goldstein.

The open and straightforward manner in which Swan and Carington testified carried with it conviction and satisfied the court, and must have convinced the jury, that they had been but innocent dupes of Goldstein, and that, as witnesses, they were telling the plain truth of the entire occurrence. There was ample evidence to sustain defendant's conviction. And there appears to be no sufficient reason to warrant the granting of a new trial.

*Decree.*

And now, to wit, April 28, 1924, defendant's motion for a new trial refused.

From E. E. Crumrine, Washington, Pa.