This is an action in assumpsit by the General Finance Company, appellee, on an insurance policy issued to it by the Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company, appellant, to recover the amount paid by appellee to discharge verdicts rendered against it in several trespass suits. The policy provides for indemnity against liability arising by reason of the operation of automobiles owned by appellee and/or use of an automobile for a purpose incidental to its business. The trial court directed a jury to return a verdict in favor of appellee. This appeal is from the action of the court below dismissing appellant's motions for judgment non obstante veredicto and for a new trial.
The General Finance Company is engaged in the business of financing automobiles. In connection therewith it operates a sales service station where it repairs and sells automobiles which it may have acquired by repossession after default by conditional purchasers. One James R. MacWilliams, of Washington, D.C., frequently made repossessions for appellee and, either he or his associate, Houston, would then deliver the repossessed cars to its place of business in Philadelphia. On December 7, 1937, while enroute to Philadelphia, his associate was involved in a three-car collision, damaging the automobiles of one Scrivan and one Warfield and injuring a passenger *Page 360 
in the Warfield car. On December 10, 1937, appellee was advised of the accident. Irving Silver, collection manager of appellee, immediately contacted its broker, Stein, requesting that appellant be duly notified. Stein thereupon contacted H. C. Fenno, the broker through whom the insurance had been effected. Alexander Maxwell, general manager of appellant, was immediately notified of the accident by telephone. Fenno was referred to Eli Betzer, branch manager of appellant's Philadelphia office, who, being of opinion that no liability was imposed, and desirous of avoiding the creation of a reserve fund before the beginning of the following year, advised that appellee should not submit any formal written notice of the accident at that time.
On February 10, 1938, summons of suit begun by Scrivan in a Baltimore city court was served on appellee by registered mail. This summons, together with a statement of claim, was immediately forwarded to appellant, which received it February 11. This was the first written notice to appellant of the accident. Appellant made an investigation, and its counsel appeared on behalf of appellee and successfully contested the action. Subsequently separate suits were instituted in the Federal District Court in Philadelphia by Warfield, and Waggaman, a passenger in the Warfield car. On December 9, 1938, counsel for appellant sent a formal letter of disclaimer to appellee and refused to defend the actions. On December 19, a non-waiver agreement was entered into wherein appellant consented to appear and defend the suits on behalf of appellee, reserving the right to deny liability under the policy for any loss sustained by appellee as a result of these actions. Verdicts against the appellee were subsequently paid by it. Appellant, exercising the right reserved to deny liability under the indemnity contract, refused to indemnify appellee for the amount of the verdicts so paid. This action was then instituted.
Denial of liability is based upon appellant's contentions that (1) appellee failed to give prompt written *Page 361 
notice, thereby breaching a condition of the insurance contract and voiding it; (2) that the policy by its terms does not cover the accident from which appellee's loss arose for MacWilliams was not "engaged in the business described", hence no premium was paid which was intended to cover his activities; and, (3) that the insurance was limited to include liability arising in and about the locations described in the policy.
The purpose of the requirement for notice is to permit the insurer to make an investigation and defend any claim arising out of the accident. The successful defense to the Scrivan suit indicates that opportunity for sufficient investigation did exist. Considering the circumstances appellant cannot now insist upon the failure to give prompt written notice. Appellant's action, through its general manager Maxwell and branch manager Betzer, was of a nature clearly calculated to and did prevent prompt submission by appellee of written notice of the accident. In Curran v. The National L. Ins. Co., U.S.of A., 251 Pa. 420, we said (p. 432): "where the delay in . . . the giving of notice is due to circumstances not attributable to neglect or bad faith on the part of [appellee] and the required . . . notice [was] in fact furnished within a reasonable time under the circumstances, failure to file within the time stipulated is excusable." See Windsor Mfg. Co. v.Globe Rutgers F. Ins. Co., 277 Pa. 374, 379-80.
The policy insured against loss or expenses suffered by appellee "for damages in consequence of an accident occurring during the term of the policy, within the limits of the United States and Canada, caused by reason of: . . . (2) the ownership, maintenance, operation, and/or use of any style, type, or make of automobile . . . for any purpose . . . incidental to the assured's business of operating an automobile garage, sales agency, service station, and/or repair shop . . ." Clause N of the Garage and Sales Agency Endorsement provides: "The premium for the policy is based upon the compensation earned during the period of the policy by all persons *Page 362 
engaged in the business described herein, and such compensation shall include salary, wages, commissions, payments for piecework, overtime, or allowances . . . The assured shall, during the entire period of the policy, keep a complete and accurate record of all accounts and expenditures above referred to." Provision is made for a computation of the premium at the end of each policy period. Should the premium exceed the estimated premium, appellee must pay to appellant additional premiums earned. If the premium is less than the estimated premium appellant must return to appellee the unearned amount. In any event, however, appellant is guaranteed the minimum stated in the application for the policy.
We may assume that liability arising from accidents, for which the appellant is bound to indemnify appellee, is restricted to those who may be considered engaged and whose compensation is made the basis for the amount of premium paid. It is not without purpose that Paragraph N provides "such compensation shall include salary, wages, commissions, payments for piecework . . ." It is admitted that MacWilliams received compensation on numerous occasions and that he was paid piecework for each individual repossession coming within that category. If the auditors of appellant, in checking the payroll and records of all compensation paid, have failed to properly include compensation for piecework, thereby preventing an increased premium, appellant cannot complain. The car was being brought back to the appellee's Philadelphia sales department after having been repossessed. It cannot be seriously contended that this was not a purpose incidental to the appellee's business of operating an automobile garage and sales agency. Houston, at the time of the accident, was engaged in the business of appellee, and liability arising from the use of the car was insured against.
The scope of the policy is very broad, insuring against loss in consequence of an accident occurring "within the limits of the United States and Canada." Appellant contends that it could not have been the intention *Page 363 
of the parties to enter into an agreement of such broad application. It suggests to this Court that every possible location in the United States would be covered instead of the locations specifically mentioned in the policy. It urges that the intention was to limit the scope of the policy to liability arising in and about Philadelphia. "Where the language used is plain and unambiguous, the rights of the parties must be determined by the provisions of the instruments wherein they committed their agreement to writing": Musselman v. SharswoodB. L., 323 Pa. 550, 556; Siegel Company v. PhiladelphiaRecord Co., 348 Pa. 245, decided this day. The language of the contract is quite definite. It covers all accidents arising in the United States and Canada if the employee or agent is engaged at the time of the accident by any of the four branches whose location is stated in the application for the insurance, the one with which we are concerned being No. 674 North Broad Street, Philadelphia. The case of United States F. G. Co. v.Baldwin Motor Company, 34 S.W.2d 815, relied upon by appellant, is not inconsistent with our determination. There the employee was fifteen years of age and specifically excluded from the operation of the policy. He was also engaged by a branch office not covered by the policy. The latter reason is also the basis for the decision in Hardware Mutual Casualty Co.v. Higgason, 175 Tenn. 357.
We are of opinion that MacWilliams and his associate were "engaged" by appellee within the meaning of the policy; that the automobile involved was owned by appellee; and that it was being used for a purpose "incidental to the business" of assured. The resulting liability is, therefore, within the scope of the indemnity contract. If the liability imposed under the contract seems unreasonable, the remedy is a change in the terms of the policy. Were we to sustain the contention of the appellant we would, in effect, be writing a new policy of insurance. That is not the function of this Court.
Judgment affirmed. *Page 364